THE WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellant, v. ADAMS COUNTY *et al.,* Defendants-Appellees.

Fourth District   No. 4—88—0248

Opinion filed February 16, 1989.

Jerry L. Brennan, of Keefe, Gorman & Brennan, of Quincy, for appellant.

James R. Schirott and James G. Sotos, both of Schirott & Associates, P.C., of Itasca, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiff Western Casualty and Surety Company (Western) appeals the order of Adams County circuit court denying its motion for summary judgment in a declaratory judgment action brought against its insured, Adams County (County). The trial court granted the County's motion for summary judgment and ruled Western had a duty to defend. We affirm.

On March 18, 1987, Western filed a complaint for declaratory judgment pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701), requesting the court to establish the rights and legal relations of the parties under certain insurance policies issued to the County from May 1978 through May 1983. A general liability policy, including automobile coverage, and an umbrella policy were in effect each of the five years in question.

The County demanded Western defend under the policies after Courtney Stephens and other Adams County landholders (collectively referred to as plaintiffs) brought a six-count action against Adams County, two of its township assessors, two supervisors of assessments, and various members of the County Board of Review (collectively referred to as defendants). The events forming the basis of the complaint occurred from 1972 through 1985.

The first four counts alleged deprivations of due process and equal protection in violation of the Civil Rights Act (42 U.S.C. §1983 (1982)). Counts I through III alleged certain defendants annually "purposefully assessed" plaintiffs' property in excess of legal limits despite repeated challenges to the assessments which were ultimately resolved in plaintiffs' favor by the property tax appeal board or by judicial decision. In addition, plaintiffs alleged County officials assessed the farmland on a productivity basis rather than on fair cash value,

failed to assess quadrennially, and failed to equalize assessments. In count IV, plaintiffs alleged an equal protection violation based on the defendant supervisors of assessments' purposeful failure to properly train and supervise township assessors, resulting in excessive assessments made on a productivity basis rather than on a fair cash value basis, and annual rather than quadrennial assessments.

Counts V and VI allege various defendants knowingly neglected certain duties in violation of sections 322 and 323 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1985, ch. 120, pars. 803, 804). Specifically, the counts claimed supervisors of assessments failed to maintain complete sets of property cards, failed to reassess properties upon plaintiffs' application, failed to reassess the properties for diminution of assessed valuation relating to destruction of buildings, and failed to convene a public hearing to discuss equalized assessed valuation of farmland. Count VI alleged defendants knowingly neglected their duties by failing to keep a complete set of property cards, failing to reassess as required by law, and failing to figure assessments using a productivity index. Plaintiffs claimed the County officials' actions prevented or hindered proceedings in which plaintiffs sought reduction and equalization of assessed valuations, and resulted in assessments higher than that of comparable property.

In its complaint for declaratory judgment, Western claimed no coverage existed because (1) the events described in the Stephens complaint did not fall within the definition of "occurrence" provided in the policies; (2) the complaint did not allege a cause of action for personal injury or property damage as defined in the policies; and (3) the complaint appeared to allege a cause of action for intentional overassessment of property tax, which the policies did not cover. Attached to the complaint were various excerpts from the policies in effect during the applicable time; however, complete copies of the policies appear in the record.

The parties filed cross-motions for summary judgment. On March 9, 1988, the trial court granted the County's motion for summary judgment and ordered Western to defend. This appeal followed.

Western argues principally that the Stephens complaint alleges intentional conduct which by definition cannot be termed an occurrence, and consequently, is clearly not covered by the policy. The County contends the Stephens complaint alleges an occurrence potentially within the ambit of the policies' coverage. It also contends the complaint states a cause of action for personal injury or property damage sufficient to trigger Western's duty to defend.

■ Summary judgment should be granted only when the plead-

ings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. (*Clifford-Jacobs Forging Co. v. Capital Engineering & Manufacturing Co.* (1982), 107 Ill. App. 3d 29, 33, 437 N.E.2d 22, 25.) The reviewing court will reverse the order granting summary judgment if it determines that a genuine issue of material fact does exist. *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 441 N.E.2d 860.

■■■ In Illinois, an insurers' duty to defend an action against its insured is determined by the allegations of the complaint. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245.) The duty to defend is much broader than the duty to indemnify. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150; *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.) The duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured even if only one or some of them are within the policy coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Unless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700.) "Potentially covered" means that the insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy. There need not be a probability of recovery. (*Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.* (7th Cir. 1987), 832 F.2d 1037, 1042, citing 7C J. Appleman, Insurance Law & Practice §4683.01, at 67 (1979).) The complaint need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 377, 522 N.E.2d 758, 768.

■■■ If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475

N.E.2d 872.) The complaint against the insured must be liberally construed. Any doubts about potential coverage are to be resolved in the insured's favor. *La Rotunda,* 87 Ill. App. 3d at 451, 408 N.E.2d at 933.

Turning to the policies in question, the pertinent provisions of the general and umbrella policies essentially define "occurrence" as an accident which causes bodily injury, personal injury, or property damage, neither expected nor intended by the insured, including continuous or repeated exposure to conditions.

The policies define personal injury:

> " 'Personal Injury' means (1) bodily injury, sickness, disease, disability or shock, including death arising therefrom, and, if arising out of the foregoing, mental anguish and mental injury; (2) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, or malicious prosecution; or (3) libel, slander, defamation of character, humiliation, or invasion of the rights of privacy, unless arising out of advertising activities; and (4) racial or religious discrimination not committed by or at the direction of the insured or any executive officer, director or stockholder thereof, but only with respect to the liability other than fines and penalties imposed by law; caused by an occurrence during the policy period."

During the first, second, and fifth policy years the definition of "personal injury" was limited to "Bodily Injury, Sickness, Disease, Disability or Shock, including Death arising therefrom," in consideration of a reduced premium. The general policies cover only bodily injury, which the County concedes is not in issue here.

The policies define property damage:

> "(1) [P]hysical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

The focus of the trial court's inquiry during oral argument was the police professional liability exclusion attached to the policies in years three and four. The relevant portion of the exclusion stated:

> "This policy shall not apply to Personal Injury or Property Damage caused by Errors and/or Omissions of Police Officers including but not limited to: false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, violation of

property rights, or deprivation of any rights, privileges or immunities secured by the Constitution and the laws of the United States."

A municipality endorsement appended to the policy for years one through four excluded coverage (unless covered by the underlying insurance) for property damage caused by explosion, collapse, or underground property damage hazard. It also excluded personal injury arising from false arrest, detention, or imprisonment, as well as malicious prosecution, libel, slander, defamation, violation of privacy rights, wrongful entry or eviction, or other invasion of right of private occupancy. An amendatory endorsement in the fifth year excluded the same items.

The umbrella policy for years three through five also excluded errors, acts or omissions, neglect or breach of duty by the insured or someone for whose acts the insured is responsible, arising from duties discharged as a municipality or municipal council, or elected or appointed members and officials thereof.

Counts I through IV allege deprivation of due process and equal protection under section 1983 resulting from the County's purposeful overassessment of plaintiffs' property. Western correctly argues there is no remedy under section 1983 based on a defendant's mere negligence resulting in a violation of a plaintiff's protected rights. *Illinois Farmers Insurance Co. v. Preston* (1987), 153 Ill. App. 3d 644, 505 N.E.2d 1343; *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1980), 89 Ill. App. 3d 701, 411 N.E.2d 1030.

The County places considerable reliance on *Grant v. North River Insurance Co.* (N.D. Ind. 1978), 453 F. Supp. 1361. The plaintiffs sued the city of Fort Wayne, Indiana, under section 1983 for injuries occurring when police officers killed and injured persons they erroneously believed to be fleeing bank robbery suspects. The city brought a declaratory judgment action to determine rights under several liability policies in effect at the time of the occurrence. The first policy insured all city departments and covered bodily injury or property damage. The second policy, a police professional liability policy, covered personal injury, bodily injury, and property damage. The court ruled the third policy, an umbrella policy, covered the civil rights violations that were the subject of the lawsuit. The court looked to the fact that the police professional liability policy specifically covered bodily injury, the type of injury which gave rise to the section 1983 claim. In addition, both the police liability policy and the umbrella policy covered personal injuries, held to be broader than physical bodily injuries. Grant is distinguishable since the type of injury sustained was explic-

itly covered in the policy.

In *Illinois Farmers Insurance Co. v. Preston* (1987), 153 Ill. App. 3d 644, 505 N.E.2d 1343, a school employee sued a school education committee member in Federal court, alleging a section 1983 violation as well as other State tort and contract claims. The crux of the plaintiff's complaint was he alleged the committee member made certain false and misleading statements which led to his wrongful dismissal. The plaintiff alleged the conduct rose to the level of a deprivation of constitutional rights. The defendant's homeowner's insurance carrier refused to defend, relying on an endorsement which specifically excluded the insured's intentional acts from coverage. In the subsequent declaratory judgment action brought by the insurer, the court ruled that the complaint alleged a civil conspiracy based on intentional conduct. Since the allegations of the complaint showed the claim was excluded or fell outside coverage, the court ruled the insurance company had no duty to defend.

■ Here, we note there is no endorsement in either the general comprehensive policies or the umbrella policies specifically excluding intentional acts, with the exception of the sheriff's endorsement, which excludes coverage for wilful police misconduct. Included within coverage under the personal injury provisions for years three and four are false arrest, false imprisonment, and defamation, all of which require the element of intent. Thus, the policies cover some intentional conduct. This ambiguity is sufficient to refute Western's argument that the policies do not cover intentional acts. (See *Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.* (7th Cir. 1987), 832 F.2d 1037.) Resolving any doubts against the insurer, we hold the civil rights allegations fall potentially within the scope of policy coverage.

■ As to the definition of "occurrence," the inquiry is not whether the insured intended or expected the event resulting in the damage but whether he intended or expected the damage resulting from the event. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 522 N.E.2d 758 (relying on authority from other jurisdictions); see also *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150 (under "occurrence" definition in policy, the insurable event giving rise to the obligation to provide coverage is not the exposure to conditions but the resulting bodily injury).) At least one Illinois court has held that even where an intentional acts exclusion applies, a question may exist whether the insured's intentional conduct was expected or intended to cause injury. See *Grinnell Mutual Reinsurance Co. v. Frierdich* (1979), 79 Ill. App. 3d 1146, 399 N.E.2d 252.

The County argues the police professional liability endorsement's exclusion of civil rights claims indicates the parties intended coverage of civil rights claims unrelated to police conduct. The County has cited no authority which indicates that failure to exclude a particular basis of liability operates to include it. However, we note that during oral argument before the trial court, counsel for Western stated, "I'm not saying this policy doesn't apply to some civil rights claims." While this statement is not dispositive, it reinforces the existence of doubt as to whether the allegations fall within the policy coverage.

■■ Turning to the State law claims, section 322 of the Act provides:

> "Any assessor, or deputy assessor, county assessor, member of the board of appeals or member of the board of review, or other person whose duty it is to assess property for taxation or equalize any such assessment, who shall *refuse or knowingly or wilfully neglect* any duty required of him by law, or who shall consent to or connive at any evasion of the provisions of this Act whereby any property required to be assessed shall be unlawfully exempted in whole or in part, or the valuation thereof be set down at more or less than is required by law, shall be guilty of a Class A misdemeanor. He shall also be liable upon his bond to the party injured for all damages sustained by such party as above provided, and shall also be removed from office by the judge of the court before whom he is tried and convicted." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 120, par. 803.)

Section 323 of the Act states:

> "Every county clerk, assessor, collector or other officer who shall in any case *refuse or knowingly neglect* to perform any duty enjoined upon him by this Act, or who shall consent to or connive at any evasion of its provisions, whereby any proceeding required by this Act shall be prevented or hindered, or whereby any property required to be listed for taxation shall be unlawfully exempted, or the same be entered upon the tax list at less than 33 1/3% of its fair cash value or the value determined in accordance with Section 20e of this Act, or such percentage as may be provided by a county ordinance adopted pursuant to Section 4 of Article IX of the Constitution of Illinois, shall, for every such offense, neglect or refusal, be liable, on the complaint of any person, for double the amount of the loss or damage caused thereby, to be recovered in a civil action in the name of the People of the State of Illinois in any court hav-

ing jurisdiction, and may be removed from his office at the discretion of the court." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 120, par. 804.)

Western suggests the knowing or wilful neglect required rises to the level of intentional conduct, citing *Hamer v. Kirk* (1978), 57 Ill. App. 3d 335, 373 N.E.2d 64. *Hamer* provides no definition of either term. While "refusal" in section 323 may suggest an intentional act, we are unaware of any definition of the remaining terms which would clearly categorize them as intentional. In any event, if either the Federal or State law claims are deemed potentially within the ambit of coverage, the duty to defend extends to a complaint alleging several causes of action or theories of recovery against an insured, even if only one or some of them are within the policy coverage. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Since we rule the Federal law claims are potentially within the ambit of coverage, Western's duty to defend also extends to the State law claims.

For the foregoing reasons, we affirm the judgment of the circuit court. We need not address the parties' remaining contentions.

Affirmed.

LUND and KNECHT, JJ., concur.