BITUMINOUS CASUALTY CORPORATION, Plaintiff-Appellee, v. GUST K. NEWBERG CONSTRUCTION COMPANY *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—90—2292

Opinion filed July 19, 1991.—Rehearing denied September 27, 1991.

Carey, Filter, White & Boland, of Chicago (Michael J. Murray and Edward M. White, of counsel), for appellants.

Pope & John, Ltd., of Chicago (Matthew J. Gehringer and Michael K. Bartosz, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

Defendants Gust K. Newberg Construction Co., Paschen Contractors, Inc., and Newberg/Paschen were sued by the State of Illinois and sought defense and indemnity from their insurance company, Bi-

tuminous Casualty Co. Bituminous denied coverage, contending the allegations against defendants in the State's lawsuit were not covered by the liability policy Bituminous issued related to the construction of the State of Illinois Center in Chicago, Illinois. Bituminous filed a declaratory judgment action against these defendants and two other defendants, Morse Diesel, Inc., and Murphy-Knight. Bituminous sought a determination by the court as to whether or not it had a duty to defend or indemnify the defendants in the underlying action. The trial court granted the insurer's motion for summary judgment on both the defense and indemnity issues and defendants appealed.

Defendants raise three issues on appeal: (1) whether the trial court improperly granted Bituminous' motion for summary judgment, holding as a matter of law that Bituminous had no obligation to defend Newberg/Paschen even though the complaint in the underlying action alleges property damage that resulted from defects caused by others; (2) whether the broad form property damage exclusions contained in the comprehensive general liability insurance policies are ambiguous and susceptible to more than one reasonable interpretation and, therefore, are to be construed against Bituminous; and (3) whether the trial court erred in addressing the duty to indemnify where there has been no adjudication of the underlying complaint.

The record establishes that on October 15, 1987, plaintiff Bituminous Casualty Corp. filed a declaratory judgment action against Gust K. Newberg Construction Co., Paschen Contractors, Inc., Newberg/Paschen, Morse-Diesel, Inc. and Murphy-Knight. The complaint alleged that defendants, named as additional insured under certain policies issued by plaintiff, are defendants in another action filed by the State of Illinois in Cook County circuit court, *i.e.*, People of the State of Illinois, ex rel. George B. Peters v. Murphy-Knight, No. 87 L 7496 (*Peters*).

In the *Peters* suit the State alleged various acts and omissions by 15 defendants resulted in the improper design, manufacture and installation of the heating, ventilation and air conditioning system at the State of Illinois Building in Chicago. The State sought in excess of $15 million in damages to compensate for more than $10 million in repairs the State has had to make on the HVAC system and more than $5 million for lost rent, lost productivity from State employees and increased electrical consumption from portable fans and heaters.

Plaintiff insured the five defendants named in the State's second amended complaint but only three of those defendants appealed the trial court's adverse ruling against them in the declaratory judgment action: Gust K. Newberg Construction Co., Paschen Contractors, Inc.,

and Newberg/Paschen. Count XVII of the second amended complaint made specific allegations against these three defendants. It alleged that Gust K. Newberg Construction Co. and Paschen Contractors, Inc., entered into a joint venture as Newberg/Paschen and signed a $63.977 million contract May 20, 1981, as general contractor for the State of Illinois Center construction. The suit alleged that Newberg/Paschen failed in its duty to supervise, coordinate and inspect installation of the HVAC system and alleged that the system installed was inadequate for the building.

Defendants tendered a copy of the complaint to plaintiff insurer, contending that plaintiff was obligated to defend and indemnify them in the pending action according to the terms of the insurance policy between defendants and plaintiff. Plaintiff filed a declaratory judgment action alleging that the policies undertaken between plaintiff and defendants did not afford coverage to any of the defendants for any of the claims in the *Peters* suit.

Plaintiff moved for summary judgment and defendants filed their memorandum of law in opposition to the motion. In arguments on the motion, Bituminous contended that no portion of the insurance policy between the parties covered the State's claims. Bituminous argued that the State's suit alleged only "disappointed commercial expectations," contending the contractor failed to install an HVAC system that would properly air condition the building. Bituminous argued that the resulting economic losses did not fit the insurance policy's definitions of "property damage" and "occurrence," which would require coverage. Defendants argued that plaintiff had a duty to defend them because the complaint alleged property damage for a defective or inadequate HVAC system which failed to function properly and had to be replaced.

After hearing arguments, the trial court entered an order granting summary judgment in plaintiff's favor and against all defendants. The court found that Bituminous owed no duty to defend or indemnify any of the five defendants based on the allegations in the State's second amended complaint in the underlying action.

In its analysis, the court reasoned that the cost to remedy and repair the system was an economic loss. The court found that the underlying complaint made no allegations of an accident as its cause. The court found that, "essentially[,] this is a question of poor workmanship and has nothing to do with an accident or occurrence that would trigger coverage, especially in view of the fact that the language requires a physical injury and not merely an injury."

Defendants Gust K. Newberg Construction Co., Paschen Contractors, Inc., and Newberg/Paschen appealed the trial court's order. Defendants Morse-Diesel, Inc., and Murphy-Knight filed no appeal.

■ Initially we consider defendants' contention that the trial court erred when it held as a matter of law that Bituminous had no obligation to defend Newberg/Paschen, Paschen Contractors, Inc., and Gust K. Newberg Construction Co. The purpose of an insurance contract is to indemnify the insured, and therefore, the policy should be liberally construed with any uncertainty resolved in favor of the insured. (*Reliance Insurance Co. v. Martin* (1984), 126 Ill. App. 3d 94, 96, 467 N.E.2d 287.) An insurer may not justifiably refuse to defend an action if it is clear from the facts of the complaint that it alleges facts within the policy's coverage or potentially within the policy's coverage. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 152, 466 N.E.2d 1091; *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150.) The threshold requirement that the complaint must satisfy to present a claim of potential coverage is minimal. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928.) For potential coverage, the complaint need present only a possibility of recovery, not a probability of recovery. *Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 756, 534 N.E.2d 1066.

The policy issued by Bituminous states that the insurer will defend any suit seeking damages against the insured for property damage. "Property damage" is defined in the policy as: "(a) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." An "occurrence" is defined in the policy as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

First we must consider whether the State's complaint alleges property damage which resulted in "physical injury to or destruction of tangible property."

Defendants contend the complaint contains allegations of "physical injury" because the State alleged it was required to replace or rebuild the HVAC system at a cost of more than $10 million in labor and materials. Defendants argue that a reasonable inference from the allegations of the complaint is that during the repair work, walls, ceil-

ings and other portions of the building had to be removed and replaced or repaired. Defendants urge that any ambiguity must be resolved in favor of defendants. *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378, 384, 535 N.E.2d 1071.

Defendants cite several cases which we find useful in our analysis: *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087, 550 N.E.2d 1032; *Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 514 N.E.2d 479; *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.* (N.D. Ill. 1989), 721 F. Supp. 984; and *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41.

In *Wilkin,* an insulation company sought indemnity and defense from U.S.F.& G. after it was sued for allegedly installing asbestos-laden materials in a number of schools and public buildings. The court held that the incorporation of asbestos-content materials into the schools constituted property damage to the buildings, not because of the diminution in value to the schools, but because of the installation of a defective product alone. *Wilkin,* 193 Ill. App. 3d at 1095.

The Illinois Supreme Court affirmed *Wilkin* (144 Ill. 2d 64), holding that the underlying complaint alleged property damage because the buildings and the contents in the buildings were contaminated by toxic asbestos fibers. No contamination is alleged in the *Peters* complaint on which the present controversy is based.

In *Marathon Plastics,* a plastics company sold defective gaskets and pipes to a water system installer. When the plastics company was sued it sought defense and indemnity from its insurer, International Insurance Company. In a declaratory judgment action, the appeals court found property damage occurred to the water system because of its diminution in value and therefore found coverage under the policy, even though no physical injury occurred to the system. *Marathon Plastics,* 161 Ill. App. 3d at 463.

In *W.E. O'Neil Construction Co.,* the court held that property damage occurs when a defective product which is manufactured or installed by the insured is integrated into someone else's property. The court held that this damage occurs exclusive of the cost of repairing or replacing the defective part. The court held that damage to a parking garage from the inclusion of a defective component constituted property damage, even where the insured is a general contractor responsible for the construction of the entire structure. *W.E. O'Neil Construction,* 721 F. Supp. at 992.

In *Elco*, Elco sought defense and indemnity after it was sued for allegedly failing to heat-treat and case-harden governor regulating pins, a product provided by Elco for installation into a company's engines. The pins had to be repaired or replaced in some instances resulting in disassembly of the engines, destruction of gaskets and destruction of plugs. The court found the allegations alleged property damage because correcting the problem resulted in damage to components of the finished engines. *Elco*, 90 Ill. App. 3d at 1111.

Plaintiff contends the complaint alleged no physical injury to or destruction of tangible property but rather alleged a breach of contract based on nothing more than disappointed commercial expectations. Plaintiff argues that the State simply sought to recover the cost of repairing the system when no people or property was injured.

Plaintiff argues that comprehensive general liability policies such as the one here are intended to protect the insured from liability for injury to people or property, but are not intended to pay the costs associated with repairing or replacing the insured's defective work and products. Plaintiff argues that to interpret the comprehensive general liability policy as defendants urge would transform the insurer's obligation under the policy into the coverage provided by a performance bond. *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 833-34, 462 N.E.2d 1288.

Plaintiff cites to numerous cases for the proposition that Illinois courts preclude a finding of insured property damage where only economic losses are claimed: *Qualls* (123 Ill. App. 3d at 835) (damages resulting from poor workmanship in house construction are economic losses, not property damage); *CMO Graphics, Inc. v. CNA Insurance* (1983), 115 Ill. App. 3d 491, 496-97, 450 N.E.2d 860 (lost profits, goodwill and printing costs are intangibles not covered under a general liability policy where plaintiff failed to allege any damages caused to its products or any diminution in value of its products as a result of the printing of defective advertising inserts); *Ludwig Candy Co. v. Iowa National Mutual Insurance Co.* (1979), 78 Ill. App. 3d 306, 310, 396 N.E.2d 1329, 1332 (lost profits, damage to reputation, lost goodwill and costs incurred from incidental expenses and in warehousing defective candy that had to be pulled from the market were economic losses not covered by the property damages portion of the insured's liability coverage); *Chambers Gasket & Manufacturing Co. v. General Insurance Co. of America* (1975), 29 Ill. App. 3d 998, 1001-02, 331 N.E.2d 203, 205-06 (no property damage alleged when complaint sought recovery for defective gaskets but alleged no injury to any other property); *Hartford Accident & Indemnity Co. v. Case Founda-*

*tion Co.* (1973), 10 Ill. App. 3d 115, 124, 294 N.E.2d 7 (investments, anticipated profits and financial interests are not physical or tangible property); and *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F. 2d 417, 419 (inclusion of a defective component where no physical harm occurs to other parts is not property damage).

Plaintiff contends *Wilkin* is distinguishable because there the court had to consider the unique and serious health risks associated with asbestos. In *Wilkin*, the court found a physical injury occurred to the school buildings because incorporation of asbestos into the schools physically altered the property in such a manner so as to render the buildings harmful until abatement procedures could be undertaken. *Wilkin*, 193 Ill. App. 3d at 1097.

Plaintiff argues that here the State's complaint does not raise the same concern that a faulty HVAC system could be harmful or dangerous. The State simply was faced with an HVAC system that failed in its intended purpose. Though the failure may have caused uncomfortable temperatures in the building, the building was not deemed dangerous or uninhabitable, such as it would have been with asbestos exposure.

Plaintiff distinguishes *Marathon Plastics* on its facts, noting that in that case, defective gaskets caused an entire water system to become useless. (*Marathon Plastics*, 161 Ill. App. 3d at 463.) Plaintiff argues that here the State of Illinois Center continues to be occupied and utilized and has been fully utilized throughout all litigation.

In its ruling, the trial court relied on *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 414 N.E.2d 1218. In *Sentry*, the defendant was named as a third-party defendant in an indemnity action filed by the general contractor for an industrial plant. The owner of the plant sued the contractor after the HVAC system failed to clear the plant's air of abrasive dust and vaporous solvents and oils as intended.

The *Sentry* court analyzed the losses alleged in the complaint and determined that the loss of productivity, profits and the expense of fixing the deficient HVAC system were economic losses and not property damage. The court held that the sole loss identified in the complaint that might fall within the definition of "property damage" was the deterioration and corrosion in the heat exchangers and air conditioning compressors. *Sentry*, 91 Ill. App. 3d at 690.

■ Here the State's underlying complaint does not allege property damage due to physical injury to or destruction of tangible property. The complaint alleges only economic losses due to the installa-

tion of an inadequate HVAC system. Lost rent and productivity by State employees are economic damages under the cases cited by plaintiff (*CMO Graphics*, 115 Ill. App. 3d 491, 450 N.E.2d 860; *Ludwig Candy Co.*, 78 Ill. App. 3d 306, 396 N.E.2d 1329). The State's complaint alleges physical injury to State employees in that some had to be taken to the hospital, but we find these allegations are made, not for recovery for the injured employees, but are offered as evidence of the problems that resulted from the defective HVAC system. As to the allegation of property damage to the HVAC system itself, under the holdings in *Sentry*, *Chambers* and *Hamilton Die Cast*, this is not property damage under the contract definition of "physical injury to or destruction of tangible property."

The second prong of the property damage definition that we must consider is whether the State's complaint alleges property damage caused by a "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period," as defined in the policy, thereby bringing it potentially within policy coverage.

Defendants contend the State did allege a loss of use caused by an occurrence when it alleged high temperatures in the building were the cause of lost work days for State employees who "became ill and had to go either to a hospital or home because of the heat." Defendants note that the complaint alleged defendants failed to supervise and inspect a subcontractor's work in installing the HVAC system and that under such a scenario they could not reasonably have foreseen the alleged detrimental effects the system would cause once installed. Defendants contend the allegation of an HVAC system failure meets the definition of occurrence, *i.e.*, an accident neither expected nor intended from the standpoint of the insured.

Defendants cite *Elco*, *Wilkin* and *Koehring Co. v. American Automobile Insurance Co.* (7th Cir. 1965), 353 F.2d 993, to support their position.

In *Elco*, the court found the damage alleged was an "occurrence" as defined by the policy because repairing engines and the destruction of gaskets and plugs were neither expected nor intended.

In *Koehring*, a seventh circuit Federal court case, the court held that even if the installation of improper hydraulic cylinders in mixers was voluntary, it may properly be characterized as an "accident" or "occurrence" if the injury sustained, in that case the breakdown of the mixers, was unforeseen by the insured.

The appellate court in *Wilkin* also found that the damage to the buildings fell into the second type of property damage, *i.e.*, loss of use

because school buildings laden with asbestos would be considered unsafe until abatement procedures were completed. (*Wilkin*, 193 Ill. App. 3d at 1097.) The court found the underlying complaint alleged an "occurrence" because it saw no evidence that asbestos installers could have foreseen the detrimental effect of the asbestos prior to installation. *Wilkin*, 193 Ill. App. 3d at 1097.

In the supreme court decision in *Wilkin*, the court clarified the interpretation of the definition of "occurrence," saying: "it is the 'property damage' which must be 'neither expected nor intended from the standpoint of the insured.' Therefore, it is the contamination of the buildings and their contents that must be neither expected nor intended by Wilkin." *Wilkin*, 144 Ill. 2d at 77-78.

Here, plaintiff contends defendants have failed to show how the State's complaint alleges either a "loss of use" or an "occurrence." Plaintiff points to paragraphs 4 and 6 of the underlying complaint, which allege damages, and notes that they do not even imply that the State of Illinois Center was unoccupied or unused as a result of the alleged HVAC system failure. Moreover, in the State's answers to interrogatories, it admits that "the damages alleged do not specifically refer to or include loss of use and diminution in value of the [State of Illinois Center]."

Plaintiff argues that even if this court were to find a loss of use, no coverage would attach because any loss of use was not the result of an occurrence as required by the policy. Plaintiff argues that there has been no allegation of an accident, no event and no failure, but simply a charge that the HVAC system is inadequate for its purpose.

Plaintiff cites *Hamilton Die Cast*, in which the court considered whether the delivery of defective tennis racket frames that were incorporated into a product was an occurrence under the appropriate general liability policy. The court, relying on Illinois law, found that if one of the completed rackets had broken during normal use due to the defective frames and a person or an item of property had been harmed, there would have been an "occurrence" and defendant would have had responsibility for plaintiff's defense. Since that did not occur and since in fact the rackets were pulled from the market voluntarily, there was no occurrence. *Hamilton Die Cast*, 508 F.2d at 420.

■ In insurance policies, use of the word "occurrence" instead of "accident" broadens coverage and eliminates the need to find an exact cause of damages so long as they are neither expected nor intended from the standpoint of the insured. Nevertheless, the occurrence must still be accidental. (*Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157.) An acci-

dent is defined as "an unforeseen occurrence *** of untoward or disastrous character" or "an undesigned sudden or unexpected event." The natural and ordinary consequences of an act do not constitute an accident. *Aetna Casualty*, 89 Ill. App. 3d at 619.

In *Wilkin*, the supreme court held that the continued exposure of the school buildings to asbestos fibers constituted an "accident." The State contracted with defendants to provide them with an HVAC system and now alleges that the HVAC system that was installed in the building was not what the State bargained for or expected.

■ Here there is no physical detrimental effect to the State of Illinois Center. We do not find this case analogous to the toxic fibers permeating the school buildings in *Wilkin*. The State alleges only that the air conditioning system did not do the job the State expected.

We find this case comparable to *Aetna Casualty* in that the allegations of too hot and too cold temperatures in the building are no more than the natural and ordinary consequences of installing an inadequate HVAC system. We conclude that the State's complaint does not allege a loss of use of tangible property caused by an occurrence.

Plaintiff also contended that two exclusions in the policy, exclusion "m" and an exclusion found in the broad form endorsement provision, deny defendants coverage. Defendants contended the exclusions in the policy at issue are ambiguous and should be construed against plaintiff.

Because we held that there was no "occurrence" and therefore plaintiff is not covered for this claim under the policy, we need not decide the exclusion issue.

■ Finally, defendants contend the trial court was premature in its determination that plaintiff had no duty to indemnify. However, since the trial court properly found plaintiff had no duty to defend, we hold that it also was correct in its finding that plaintiff had no duty to indemnify defendants in the underlying action.

For all the foregoing reasons, we affirm and hold that the trial court properly entered summary judgment for plaintiff, denying coverage to defendants Gust K. Newberg Construction Co., Pashen Contractors, Inc., and Newberg/Paschen.

Affirmed.

McNAMARA and EGAN, JJ., concur.