2022 IL App (1st) 220023

SIXTH DIVISION
September 9, 2022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-22-0023

| | | |
|---|---|---|
| ACUITY, a Mutual Insurance Company, | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellee, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| M/I HOMES OF CHICAGO, LLC, and CHURCH | ) | No. 19 CH 00237 |
| STREET STATION TOWNHOME OWNERS | ) | |
| ASSOCIATION, | ) | |
| | ) | Honorable |
| | ) | Allen P. Walker, |
| Defendants, | ) | Judge Presiding. |
| | ) | |
| (M/I Homes of Chicago, LLC, Defendant and | ) | |
| Counterplaintiff-Appellant). | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Mitchell concurred in the judgment and opinion.

**OPINION**

¶ 1     Appellant M/I Homes of Chicago, LLC (M/I Homes), appeals from the circuit court's entry
of summary judgment in favor of Acuity, a mutual insurance company. The circuit court found
that Acuity had no duty to defend M/I Homes in an underlying lawsuit—stemming from damages
caused by the allegedly defective construction work of one of M/I Homes's subcontractors—
because the complaint in that case did not allege "property damage caused by an occurrence." For
the following reasons, we reverse the circuit court's grant of summary judgment for Acuity and
remand for it to enter summary judgment in favor of M/I Homes on the issue of a duty to defend.

¶ 2                      I. BACKGROUND

¶ 3     This case stems from alleged defects in a multiple-building residential townhome development in Hanover, Illinois (the Townhomes). The Townhomes' owners association filed a suit for breach of contract and the implied warranty of habitability against M/I Homes as the successor developer/seller of the Townhomes, and M/I Homes asked Acuity to defend it in that underlying lawsuit, as the additional insured on a policy Acuity had issued to one of its subcontractors, H&R Exteriors Inc. (H&R). Acuity denied that it had a duty to defend M/I Homes under the policy and filed the declaratory judgment suit that is before the court.

¶ 4                      A. The Policy

¶ 5     Acuity issued to H&R a commercial general liability and commercial excess liability policy—policy No. Z60057, effective December 13, 2016, through December 13, 2017—and renewed that policy from December 13, 2017, through December 13, 2018 (collectively, the Policy). M/I Homes was listed as an additional insured on the Policy.

¶ 6     In relevant part, the Policy provided as follows:

> "1. *Insuring Agreement*
>
>      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply. \*\*\*
>
>                   \* \* \*
>
>      b. This insurance applies to *bodily injury* and *property damage* only if:

(1) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; [and]

(2) The *bodily injury* or *property damage* occurs during the policy period; ***[.]

* * *

2. *Exclusions*

This insurance does not apply to:

* * *

j. *Damage to Property*

*Property damage* to:

* * *

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

* * *

l. *Damage to Your Work*

*Property damage* to *your work* arising out of it or any part of it ***.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Emphases in original.)

¶ 7    The definitions section of the Policy further provided:

"13. '*Occurrence*' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

17. '*Property damage*' means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

* * *

22. '*Your work*:'

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Material, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work* *** [.]" (Emphases in original.)

¶ 8                          B. The Underlying Lawsuit

¶ 9    The Church Street Station Townhome Owners Association (the Association), by its board of directors, filed the underlying lawsuit against M/I Homes on October 4, 2018. On May 1, 2019,

the Association filed an amended complaint for breach of contract (count I) and breach of the implied warranty of habitability (count II). The Association alleged that it was the governing body of the Townhomes and stated that "pursuant to its grant of statutory standing," it "assert[ed] claims on behalf of all Townhome buyers and subsequent buyers." The Association cited section 1-30(j) of the Common Interest Community Association Act (Act) (765 ILCS 160/1-30(j) (West 2020)), which provides that "[t]he board shall have standing and capacity to act in a representative capacity in relation to matters involving the common areas or more than one unit, on behalf of the members or unit owners as their interests may appear."

¶ 10    In the amended complaint, the Association alleged that M/I Homes was the successor developer/seller for the Townhomes, having succeeded to the entire remaining interests of the initial developer/seller, Neumann Homes Inc. (Neumann). The Association alleged that it "was under Developer Control until November 6, 2014 when owner elected a majority of the members of the Board of the Association." The Association alleged that "Neumann and [M/I Homes] constructed and sold Townhomes with substantial exterior defects," including moisture-damaged or water-damaged fiber board, water-damaged OSB sheathing, deteriorated brick veneer, poor condition of the weather-resistive barrier, improperly installed J-channel and flashing, and prematurely deteriorating "support members below the balcony deck boards." The Association further alleged that Neumann and M/I Homes did not perform the construction work themselves, but that all work on the Townhomes was performed on their behalf by subcontractors and the designer.

¶ 11    The Association alleged:

"The Defects caused physical injury to the Townhomes (*i.e.*, altered the exteriors' appearance, shape, color or other material dimension) after construction of the

Townhome[s] was completed from repeated exposure to substantially the same general harmful conditions. The property damage was an accident in that [M/I Homes] did not intend to cause the design, material and construction defects in the Townhome[s], and the resulting property damage (such as damage to other building materials, such as windows and patio doors, including but not limited to water damage to the interior of units) was neither expected nor intended from their standpoint. *** The work of the subcontractors and the designer caused damage to other portions of the Townhomes that was not the work of those subcontractors."

¶ 12   In count I, the breach-of-contract claim, the Association specifically alleged:

"9. The Board in its representative capacity on behalf of all the owners of the Townhomes asserts a claim for breach of contract in connection with the Defects against [M/I Homes].

* * *

13. The Defects have caused substantial damage to the Townhomes and damage to other property.

19. [*sic*] As a direct and proximate result of the aforesaid breaches of contract resulting in the Defects, the Association has been and will be required to make substantial repairs to the Defects and repairs to damage to other property caused by the Defects."

The Association then requested an award of "[d]amages in an amount equal to the total cost of repair or replacement of the aforesaid Defects, and cost to repair damage to other property."

¶ 13   Similarly, in count II, its claim for breach of the implied warranty of habitability, the Association alleged that "[a]s a direct and proximate result of the aforesaid breaches of warranty, the Association will be required to make substantial repairs to the Defects and to repair damage to

other property" and that it was thus seeking "damages in an amount equal to the total cost of repair or replacement of the aforesaid Defects and damage to other property caused by the Defects."

¶ 14                                    C. The Declaratory Judgment Action

¶ 15     Acuity filed its complaint for declaratory judgment against M/I Homes and the Association on January 8, 2019, and filed the operative amended complaint on November 20, 2019. The Association is not a party to this appeal.

¶ 16     Acuity sought a declaration that it did not have a duty to defend or indemnify M/I Homes. On February 19, 2020, M/I Homes filed a counterclaim against Acuity, asking for a declaration that Acuity did owe it a duty to defend.

¶ 17     The parties filed cross-motions for summary judgment. In Acuity's motion, it argued that it did not owe M/I Homes a duty to defend because " 'the actual property the insured was working on' does not constitute covered 'property damage' caused by an 'occurrence' under the policy" (quoting *CMK Development Corp. v. West Bend Mutual Insurance Co.*, 395 Ill. App. 3d 830, 842 (2009)), and because M/I Homes was responsible for all the Townhomes, any allegation of damages "related only to the defective construction of the townhomes and specifically not any damage to any other property beyond the townhomes themselves."

¶ 18     M/I Homes argued in its cross-motion for partial summary judgment that Acuity owed it a duty to defend because the underlying complaint's allegation that there was damage to "other property" was an allegation of damage beyond just repair and replacement of the construction work. According to M/I Homes, "property damage" caused by an "occurrence" was therefore sufficiently alleged.

¶ 19     On July 30, 2021, the circuit court granted summary judgment in favor of Acuity and denied summary judgment in favor of M/I Homes. The court noted that "only property damage

7

caused by an occurrence will be covered by the Policy." The court said that it was "not persuaded that, since the [P]olicy has H&R as a named insured, any damage that occurs outside of H&R's work alone is considered an 'occurrence' " because "Illinois case law considers a subcontractor's work still within the scope of work of the general contractor." The court was also not convinced that the mere mention of damage to "other property" in the underlying complaint triggered Acuity's duty to defend because the Association was focused "on recovering for damage of the townhomes, and not necessarily 'other property' that could have been damaged by M/I Homes' faulty work."

¶ 20    On August 27, 2021, M/I Homes filed a motion to reconsider.

¶ 21    The circuit court denied the motion to reconsider, and this appeal followed.

¶ 22                                        II. JURISDICTION

¶ 23    The circuit court denied M/I Homes's motion to reconsider on November 5, 2021, and M/I Homes timely filed its notice of appeal on December 3, 2021. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 24                                        III. ANALYSIS

¶ 25    This case was decided on cross-motions for summary judgment. "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20 (quoting 735 ILCS 5/2-1005(c) (West 2008)). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v.*

*Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We review the court's ruling on a motion for summary judgment *de novo*. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22.

¶ 26    On appeal, M/I Homes argues that the circuit court should have granted summary judgment in its favor because Acuity did owe M/I Homes a duty to defend. "The duty to defend is determined solely from the allegations of the complaint." (Emphasis added.) *ISMIE Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964, 968 (2009) (citing *Thornton v. Paul*, 74 Ill. 2d 132, 144 (1978), *overruled in part on other grounds by American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000)). The duty to defend exists if the allegations in the underlying complaint fall within or *potentially* within a policy's coverage provisions, "even if the allegations are legally groundless, false, or fraudulent." *Id.* As we have explained,

> "[t]he insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." (Internal quotation marks omitted.) *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1022 (2008).

Stated another way, "[u]nless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend." *Western Casualty & Surety Co. v. Adams County*, 179 Ill. App. 3d 752, 756 (1989). In making this assessment, "[w]e liberally construe the underlying complaint and policy in favor of the insured." *Certain Underwriters at Lloyd's London v. Metropolitan Builders, Inc.*, 2019 IL App (1st) 190517, ¶ 28.

¶ 27    The Policy, which is a fairly standard commercial general liability (CGL) policy, provides that Acuity will cover "property damage" if the property damage "is caused by an occurrence." Thus, the question of M/I Home's potential for coverage, and Acuity's duty to defend, hinges on whether the underlying complaint alleges "property damage" caused by an "occurrence." The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured," and defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions."

¶ 28    M/I Homes relies on the following allegations of the underlying complaint in support of its argument that the complaint alleged property damage caused by an occurrence: (1) the defects caused damage to the Townhomes "and damage to other property," (2) the property damage "was an accident in that [M/I Homes] did not intend to cause the design, material and construction defects in the Townhome[s], and the resulting property damage (such as damage to other building materials, such as windows and patio doors, including but not limited to water damage to the interior of units) was neither expected nor intended from their standpoint," and (3) the Association was and would be "required to make substantial repairs to the Defects and repairs to damage to other property caused by the Defects."

¶ 29    M/I Homes contends that, based on these allegations, the underlying complaint sufficiently alleges property damage caused by an occurrence. M/I Homes concedes that "property damage" as covered by the Policy must be damage to property beyond the construction project itself, here the Townhomes. M/I Homes argues that the allegation of damage to "other property" in the underlying complaint is referring to "property other than the Townhomes themselves (*i.e.* property other than the contractor's work product)" and is sufficient to qualify as "property damage." M/I

Homes also argues that this damage to other property was alleged to have been caused by an "occurrence" because the underlying complaint alleged the damage was an accident—caused by the defective work of the subcontractor—that was neither expected nor intended by M/I Homes.

¶ 30    In response, Acuity argues that the allegations of damage to "other property" are not enough to trigger its duty to defend because the allegations are unconnected to a theory of recovery and the underlying complaint fails to both identify the owner of the "other property" and explain how the Association has standing to sue for the damage to that property.

¶ 31    The parties' briefing begins with the premise that Acuity has no duty to defend under the Policy unless the Association's underlying complaint alleges property damage to something outside of the Townhomes project. The parties agree that, under Illinois law, there is no "property damage" caused by an "occurrence" under a CGL policy absent such an allegation.

¶ 32    This shared understanding, which is not directly tied to the language of the insurance policy, comes from a long line of Illinois appellate court cases that are summarized in excellent fashion by Justice Robert Gordon in *CMK Development Corp.*, 395 Ill. App. 3d at 840-41. The court there starts by acknowledging that the requirement of damage to "other property" "is not explicitly stated in the policy itself but comes instead from the case law interpreting CGL policies." *Id.* at 840. It then cites a line of decisions holding that only " 'construction defects that damage something other than the project itself will constitute an "occurrence" ' " under a CGL policy. *Id.* (quoting *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 752 (2008), citing *Pekin Insurance Co. v. Richard Marker Associates, Inc.*, 289 Ill. App. 3d 819, 823 (1997), and *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 705 (1996)). The court gives examples of what has constituted "other property" in various cases, including a homeowner's furniture and personal belongings in a home constructed by the insured, cars in a

parking garage constructed by the insured, and carpets, upholstery, and drapery in a school constructed by the insured. *Id.* (citing *Richard Marker*, 289 Ill. App. 3d at 823, *Wil-Freds*, 277 Ill. App. 3d at 705, and *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 75, 81 (1991)).

¶ 33    While *CMK Development* focused on the "occurrence" requirement, other cases have focused on the CGL policy language requiring an allegation of "property damage" in the underlying complaint. See, *e.g.*, *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 54-55 (2005) ("A line of Illinois cases holds that where the underlying complaint alleges only damages in the nature of repair and replacement of the defective product or construction, such damages constitute economic losses and do not constitute 'property damage.' ").

¶ 34    Some cases have concluded that, under Illinois law, damage to "other property" is required or there is no occurrence or property damage. See, *e.g.*, *Westfield Insurance Co. v. West Van Buren, LLC*, 2016 IL App (1st) 140862, ¶¶ 18-19 (finding no duty to defend because the defects in construction were not an accident, so there was no "occurrence," and the allegations did not include "property damage" because defective work and products were purely economic losses); *Acuity Insurance Co. v. 950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 30 (noting that the existence of both an "occurrence" and "property damage" turn "on whether the complaint for which the CGL insurer is asked to defend alleges damage to property that is not any part of the construction project").

¶ 35    In these appellate court cases, this court has relied on our supreme court's decision in *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 308 (2001), which does not necessarily compel this limitation. There, the supreme court held that, in determining whether there

was CGL coverage, the predicate of "property damage" is satisfied only "when property is altered in appearance, shape, color or in other material dimension, and does not take place upon the occurrence of an economic injury, such as diminution in value." *Id.* Our supreme court in *Eljer* also cautioned against expanding CGL coverage such that it functioned as a "performance bond" for the contractual work of the insured. *Id.* at 314. Thus, the "other property" requirement does not come directly from the language of our supreme court's decision in *Eljer*.

¶ 36     Some of our cases have noted that the "other property" requirement is not grounded in the policy language itself. See, *e.g.*, *Metropolitan Builders*, 2019 IL App (1st) 190517, ¶ 32 ("[M]uch of our analysis in those cases has been driven less by literal textual construction and more by considering the overall purpose of CGL policies."); see also *CMK Development*, 395 Ill. App. 3d at 841. As we have acknowledged, this line of cases establishing an "other property" requirement has been criticized by some commentators. *Viking*, 358 Ill. App. 3d at 42 (quoting the observation that coverage for construction claims under CGL policies " 'lies in chaos' " (citing William D. Lyman, *Is Defective Construction Covered Under Contractors' and Subcontractors' Commercial General Liability Insurance Policies?*, 491 Practising L. Inst., Real Est. L. & Prac. Course Handbook Series, 505, 513 (April 2003))).

¶ 37     Commentators continue to criticize the Illinois appellate court's approach to CGL coverage. See, *e.g.*, 4Pt1 Philip L. Bruner & Patrick J. O'Connor, Construction Law § 11.210 (2022) ("Courts that deny coverage for failure to meet the 'occurrence' requirement simply because the injury is limited to the insured's work are making coverage determinations based on policy considerations rather than adhering to principles of contract interpretation.").

¶ 38     Bruner and O'Connor also note that, in recent years, the trend in cases throughout the country is to move away from this approach and view faulty workmanship as an "occurrence" and

damage from that faulty construction to the project itself as "property damage" triggering coverage under the standard CGL policy. *Id.* §§ 11.213-11.215. As some of these cases have noted, the "your work" exclusion and the subcontractor exception to that exclusion in standard CGL policies, including the Policy in this case, are rendered meaningless if damage to the project itself is not "property damage" caused by an "occurrence." See, *e.g.*, *Black & Veatch Corp. v. Aspen Insurance (UK) Ltd.*, 882 F.3d 952, 964 (10th Cir. 2018). At least one of those cases cited our supreme court's decision in *Eljer* with approval, suggesting that nothing in *Eljer* mandates that there must be damage to property outside of the construction project itself. *Capstone Building Corp. v. American Motorists Insurance Co.*, 67 A.3d 961, 980-81 (Conn. 2013) (holding that "project components defective prior to delivery, or those defectively installed, did not suffer physical injury" (citing *Eljer*, 197 Ill. 2d at 312) but that "faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition of the policy" (internal quotation marks omitted)).

¶ 39    It does not appear that the Illinois appellate court has followed this trend of eliminating any requirement of damage to "other property" or that our supreme court has addressed the issue since *Eljer*. However, at least two recent Illinois appellate court decisions have looked at the work of the subcontractor who was seeking CGL insurance coverage as though that work was a discrete project and thus treated allegations of damage to other parts of the larger construction project as allegations of damage to "other property." *950 West Huron*, 2019 IL App (1st) 180743, ¶ 43 ("[W]hen an underlying complaint alleges that a subcontractor's negligence caused something to occur to a part of the construction project outside of the subcontractor's scope of work, this alleges an occurrence under this CGL policy language."); *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 2011 IL App (1st) 101316, ¶ 28 ("[The window sealant subcontractor's] negligent

14

workmanship caused an accident in the form of significant and continuing water leakage.").

¶ 40    In at least one recent federal case, applying Illinois law, the court built on the decision in *J.P. Larsen* and held that, where the *general contractor* was seeking coverage under the subcontractor's CGL policy, as an additional insured, the underlying complaint's allegations of damage the subcontractor caused beyond the scope of its own work were sufficient to trigger a duty to defend the general contractor. *Westfield Insurance Co. v. National Decorating Service, Inc.*, 147 F. Supp. 3d 708, 717 (N.D. Ill. 2015), *aff'd*, 863 F.3d 690 (7th Cir. 2017). As the Seventh Circuit noted, in affirming the Northern District's *National Decorating* decision, "the scope of the project was [the subcontractor's], the Named Insured's, work," and the general contractor, as an additional insured under that subcontractor's policy, was entitled to coverage. *National Decorating*, 863 F.3d at 697-99.

¶ 41    The underlying complaint in this case contains allegations that could support an obligation to defend M/I Homes under the analysis of *National Decorating*. It alleges that "the work of subcontractors and the designer caused damage to other portions of the Townhomes that was not the work of those subcontractors." Just as in *National Decorating*, the defendant in the underlying case here is the general contractor who is seeking coverage as an additional insured under a subcontractor's policy. Under the reasoning of *National Decorating*, that allegation alone should be enough to trigger coverage.

¶ 42    M/I Homes does not press this argument on appeal. This is not surprising. Federal cases are not binding on this court. *Asset Exchange II, LLC v. First Choice Bank*, 2011 IL App (1st) 103718, ¶ 19. Moreover, in *950 West Huron*, 2019 IL App (1st) 180743, we took pains to distinguish the general contractor or developer from the subcontractor. Using language that Acuity quotes and relies on, we said that there was an occurrence from the subcontractor's point of view,

15

"*notwithstanding that it would not be an occurrence from a general contractor or developer's perspective.*" (Emphasis added.) *Id.* ¶ 43. Of course, the distinction we made in *950 West Huron* between finding an occurrence and property damage for the subcontractor but not for the general contractor raises the questions of whether, when, and why these terms would mean something different for different parties insured under the same policy.

¶ 43    We need not answer those questions here, although we raise them in the hope that other courts and perhaps our supreme court may bring clarity to these nuanced issues of coverage under CGL policies in construction litigation. Here, the underlying complaint simply alleges, in the broadest possible terms, that there was damage to "other property." Liberally construing both the complaint and the policy in favor of the insured (*Metropolitan Builders*, 2019 IL App (1st) 190517, ¶ 28), and applying the well-established principle that "[u]nless the complaint on its face clearly alleges facts which, if true, would *exclude* coverage," the potentiality of coverage triggering a duty to defend is present (emphasis added) (*Adams County*, 179 Ill. App. 3d at 756), we find those broad allegations are sufficient to trigger Acuity's duty to defend.

¶ 44    Acuity argues that the "other property" allegations are not enough to trigger a duty to defend because "the underlying complaint does not identify who owned that 'other property,' nor does it explain how the Association has standing to sue for that damage." According to Acuity, section 1-30(j) of the Act (765 ILCS 160/1-30(j) (West 2020))—the statute under which the Association alleged it had standing in the underlying complaint—only gives the Association the right to sue "for damage to the townhomes themselves."

¶ 45    Section 1-30(j) provides that the Association—as "a common interest community association's board of managers or board of directors" (*id.* § 1-5)—"shall have standing and capacity to act in a representative capacity in relation to matters involving the common areas or

more than one unit, on behalf of the members or unit owners as their interests may appear." *Id.* § 1-30(j).

¶ 46    Acuity relies on several cases holding that the "standing and capacity" language of the Act does not give an association standing to sue for damage to individual unit owners' property. *West Van Buren*, 2016 IL App (1st) 140862; *National Decorating*, 863 F.3d at 696; *Allied Property & Casualty Insurance Co. v. Metro North Condominium Ass'n*, 850 F.3d 844, 849 (7th Cir. 2017). M/I Homes responds that these cases are not controlling. We also note that, as the dissent in *West Van Buren* points out, standing may not provide an appropriate basis for a refusal to defend, since standing is an affirmative defense. *West Van Buren*, 2016 IL App (1st) 140862, ¶ 39 (Pucinski, J., dissenting).

¶ 47    We do not have to decide whether these cases are controlling because the allegations of the underlying complaint in this case are not necessarily limited to such damages. Even if we agree with Acuity that the duty to defend M/I Homes cannot be triggered by claims of damage to the property of unit owners, that does not eliminate the potentiality of coverage triggering a duty to defend in this case.

¶ 48    The underlying complaint in this case alleges, in broad terms, damage to "other property." Acuity says this case is similar to *West Van Buren* where we said "[w]e do not believe a free-standing reference to a fact, that is not attached to any particular theory of recovery or particular party in the complaint, can trigger a duty to defend." *Id.* ¶ 20 (majority opinion). However, the condominium association in *West Van Buren* was relying on a specific allegation that "individual unit owners experienced damage to personal and other property as a result of the water infiltration." (Internal quotation marks omitted.) *Id.* ¶ 6. In this case, in contrast, the underlying complaint references damages to "other property" and is not limited to the property of unit owners for which

the court in *West Van Buren* found the association had no right to recover.

¶ 49    The threshold for finding a duty to defend is low and "any doubt with regard to such duty is to be resolved in favor of the insured." (Internal quotation marks omitted.) *Holabird & Root*, 382 Ill. App. 3d at 1023. While the allegations of damage to "other property" are certainly vague, even "vague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend." *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 26. "Unless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend." *Adams County*, 179 Ill. App. 3d at 756.

¶ 50    Here, the Association clearly does have standing "to act in a representative capacity in relation to matters involving the common areas" (765 ILCS 160/1-30(j) (West 2020)), the allegations of damage to "other property" can be a reference to the Association's own property in the common areas, and there are no allegations that would clearly exclude coverage. Accordingly, these allegations are enough to potentially fall within the Policy's coverage requirement of "property damage" caused by an "occurrence" and thus trigger a duty to defend.

¶ 51                                    IV. CONCLUSION

¶ 52    For the foregoing reasons, we reverse the circuit court's grant of summary judgment in favor of Acuity, and we remand to the circuit court to enter summary judgment in favor of M/I Homes on the issue of the duty to defend.

¶ 53    Reversed and remanded with directions.

*Acuity v. M/I Homes of Chicago, LLC*, 2022 IL App (1st) 220023

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19 CH 00237; the Hon. Allen P. Walker, Judge presiding. |
| **Attorneys for Appellant:** | Eric P. Sparks and Patrick J. Johnson of Gould & Ratner LLP, of Chicago, for the defendant/counter-plaintiff-appellant. |
| **Attorneys for Appellees:** | Joseph P. Postel of Lindsay, Pickett & Postell, LLC, of Chicago, for the plaintiff/counter-defendant-appellee. |