In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 16-1439

WESTFIELD INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

NATIONAL DECORATING SERVICE, INC.,
et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-01572 — **John Robert Blakey**, *Judge.*

---

ARGUED APRIL 12, 2017— DECIDED JULY 13, 2017

---

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This is an insurance coverage dispute that resulted after a newly constructed multi-story condominium building suffered water damage. The water damage was allegedly caused by the failure of the painting subcontractor, National Decorating Service, to apply an adequate coat of sealant to the exterior of the building.

In Illinois state court, the building's condominium association filed suit against the general contractor, developer, and various subcontractors (collectively the "defendants") to recover for the damages incurred. When the defendants tendered the defense to Westfield, National Decorating Service's insurer, Westfield filed this action seeking a declaration that it owes no duty to defend the defendants in the underlying action. After cross-motions for summary judgment were filed and fully briefed, the district court determined that the condominium association's complaint triggered Westfield's duty to defend.

On appeal, Westfield argues that the district court erred in finding that there was a duty to defend for two reasons. First, we agree with Westfield that the condominium association's allegations of damage to individual unit owners' property are not sufficient to trigger the duty because the condominium association, on behalf of its unit owners, lacks standing to pursue these claims.

Second, Westfield contends it owes no duty to defend because the condominium association's complaint does not allege a covered incident under its policy. Rather, the complaint alleges that the painting contractor failed to apply an adequate amount of paint, which cannot be said to be an "accident." Absent an "accident," Westfield asserts that there was not a covered "occurrence" under the policy. Further, Westfield argues that because the damage alleged is to the building itself, which was a new construction and not an existing structure, the condominium association has not demonstrated that there was property damage incurred that is subject to its policy.

Here, we disagree. When the policy defines the term to include the "continuous or repeated exposure to substantially the same harmful conditions," as it does here, the condominium association's allegation that the painting subcontractor acted negligently is sufficient under Illinois law to constitute an "occurrence." Further, because the painting subcontractor's actions are alleged to have damaged parts of the building that were outside of the scope of the work for which it was engaged, the condominium association's complaint alleges potentially covered property damage sufficient to invoke the duty to defend. Therefore, we affirm the district court's grant of summary judgment to the defendants.

## I. BACKGROUND

This coverage dispute arises out of the construction of a 24-story condominium building located at 200 North Jefferson Street, Chicago, Illinois ("200 North" or the "Building"). 200 North Jefferson, LLC was the owner and developer of the Building. James McHugh Construction Company ("McHugh Construction") was the general contractor who retained National Decorating Service, Incorporated ("National Decorating") as a subcontractor to perform all of the painting work. Specifically, National Decorating was tasked with painting the exterior of the Building with a protective coating known as Modac, a waterproof sealant.

### A. Underlying Action

On January 13, 2012, the Board of Managers of 200 North Jefferson Tower Condominium Association (the "Association") filed suit in the Circuit Court of Cook County. *See Bd. of Managers of 200 N. Jefferson Tower Condo. Ass'n v. 200 Jefferson LLC*, No. 2012-L-000480 (Cir Ct. Cook Cnty. filed January 13,

2012). This action, which we will refer to as the "underlying action," is currently pending and seeks to recover for damages incurred as the result of faulty workmanship on the Building. 200 North Jefferson, LLC, McHugh Construction, MCZ/Jameson Development Group, LLC, and National Decorating were named as defendants. On September 4, 2014, the Association filed the operative five-count Third Amended Complaint.

In this Third Amended Complaint, the Association identifies the following damages: (1) significant cracking of the exterior concrete walls, interior walls, and ceilings; (2) significant leakage through the exterior concrete walls, balconies, and windows; (3) defects to the common elements of the Building; and (4) damage to the interior ceilings, floors, interior painting, drywall, and furniture in the units. Although the previous complaint contained similar allegations regarding the damages incurred, it was not until the Third Amended Complaint was filed that damage to furniture was alleged. Further, it was only after the filing of the Third Amended Complaint that any of the named defendants claimed that Westfield had a duty to defend in the underlying action.

On January 9, 2014, McHugh Construction filed an Amended Third-Party Complaint against National Decorating. It contains three counts: (1) breach of contract; (2) "express contractual defense & indemnity"; and (3) negligence. McHugh alleged that it was National Decorating's actions that caused the alleged damages to 200 North.

### B.  Coverage Dispute

Westfield filed the instant action on March 6, 2014. It seeks a declaration that under the policy it issued to National Decorating, it owes neither a duty to defend nor to indemnify National Decorating, McHugh Construction, 200 North Jefferson LLC, or MCZ/Jameson. The policy at issue is a commercial general liability policy ("CGL"), which was initially effective from February 28, 2008 until February 28, 2009. It was renewed three times until it ultimately expired on November 1, 2011. There is no dispute that the policy was in place at the time the work was performed and the relevant language remained the same throughout the coverage period.

The Insuring Agreement of the policy provides that Westfield will:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

"Property damage" is defined as the "[p]hysical injury to tangible property, including all resulting loss of use of that property." Per the policy, the insurance only covers "property damage" caused by an "occurrence," which is further defined as an "accident, including continuous or repeated exposure to

substantially the same general harmful conditions." But, the policy does not define the term "accident."

The parties agree that National Decorating is the "Named Insured" under the policy, which also defines the terms "you" and "your" as referring to the "Named Insured," i.e., National Decorating. They also agree that 200 North Jefferson, McHugh Construction, and MCZ/Jameson are not "Named Insureds," but rather are "Additional Insureds" under the policy by virtue of the contracts that they entered into with each other. Instead, the parties' dispute focuses on whether the damages alleged fall within the policy's coverage parameters such that Westfield has a duty to defend in the underlying action.

### C.  Proceedings Below

After the parties filed cross motions for summary judgment and the matter was fully briefed, the district judge denied Westfield's motion. At the same time, the court granted the defendants' motions for summary judgment. While the district court found that the issue of indemnification was premature at this juncture in the litigation, it concluded that pursuant to the Westfield policy and Illinois law, Westfield had a duty to defend the defendants in the underlying action. Westfield now appeals.

## II. ANALYSIS

We review the district court's interpretation of the insurance policy at issue and the resulting grant of summary judgment *de novo*, *Nautilus Insurance Co. v. Board of Directors. of Regal Lofts Condominium Ass'n*, 764 F.3d 726, 730 (7th Cir. 2014), construing all facts in the light most favorable to the non-moving party. *Suarez v. W.M. Barr & Co.*, 842 F.3d 513, 517 (7th Cir. 2016) (citing *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)). When considering a district court's decision on cross-motions, we must "construe all inferences in favor of the party against whom the motion under consideration is made." *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)) (internal quotation mark omitted). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Under Illinois law, which the parties agree applies, the duty to defend is determined by comparing the allegations in the underlying complaint to the policy at issue. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1073 (7th Cir. 2004) (citing *Dixon Distrib. Co. v. Hanover Ins. Co.*, 641 N.E.2d 395, 398 (Ill. 1994)) (additional citations omitted). We must liberally construe the underlying complaint and the insurance policies in favor of the insured. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991); *see also Westfield Ins. Co. v. W. Van Buren, LLC*, 59 N.E.3d 877, 882 (Ill. App. Ct. 2016) ("The complaint must be liberally construed and all doubts resolved in favor of coverage for the insured."). "The construction of an insurance policy is a question of law[,]" *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 527 (Ill. App.

Ct. 2011), and when interpreting a policy, we are bound by the same general rules governing contract interpretation. *W. Van Buren*, 59 N.E.3d at 882.

The duty to defend is triggered if the allegations in the underlying complaint fall within, or potentially within, the policy's coverage. *Lagestee-Mulder, Inc. v. Consol. Ins. Co.*, 682 F.3d 1054, 1056 (7th Cir. 2012) (quoting *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)). "This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006) (citing *Wilkin Insulation Co.*, 578 N.E.2d at 929).

Therefore, for an insurer to justifiably refuse to defend a lawsuit it must be "clear from the face of the underlying complaint" that the allegations fail to bring the case within or potentially within, the policy's coverage. *Id.* Nonetheless, while under Illinois law the duty to defend is broad, the duty is not limitless. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 812 (7th Cir. 2010). It is also distinct from the duty to indemnify, which is determined once liability has been assigned, *National American Insurance Co. v. Artisan & Truckers Casualty Co.*, 796 F.3d 717, 724 (7th Cir. 2015), and is "significantly narrower than the duty to defend … ." *Allied Prop. & Cas. Ins. Co. v. Metro N. Condo. Ass'n*, 850 F.3d 844, 847 (7th Cir. 2017); *see also Ohio Cas. Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146, 1147 (7th Cir. 1987) (noting that "an insurer's duty to defend is much broader than its duty to indemnify").

### A. Unit Owners' Property Damage Insufficient for the Duty to Defend

Westfield asserts that the only allegations contained in the Association's Third Amended Complaint that might be sufficient to invoke a duty to defend are the allegations that individual unit owners suffered damage to their property (*i.e.*, furniture, etc.). Nonetheless, because Westfield contends that the Association does not have standing to pursue these claims, it argues that these allegations are insufficient to trigger the duty to defend. We agree.

As we recently noted in *Allied Property*, under the Illinois Condominium Property Act, 765 Ill. Comp. Stat. 605/1, *et seq.*, a condominium association may act in a representative capacity on behalf of its unit owners. *See* 765 Ill. Comp. Stat. 605/9.1(b). Yet, the Act limits the scope of such representation "to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." *Id.*; *see also Allied Prop.*, 850 F.3d at 849. This limitation precludes the Association from being able to pursue a legal remedy for the damage that it alleges National Decorating's actions caused to the individual unit owners' furniture. Because the Association cannot legally recover for this alleged damage, these allegations are insufficient to invoke the duty to defend. *See Allied Prop.*, 850 F.3d at 849.

### B. Other Damage to the Building Sufficient to Invoke the Duty to Defend

Our conclusion that the allegations of damage to the individual unit owners' property are insufficient to invoke the duty to defend is not, however, the end of our inquiry. Rather, we must determine whether the policy's coverage is triggered,

or potentially triggered, by the other damage allegedly caused by National Decorating's actions.

On appeal, Westfield advances two arguments in support of its position that the damages alleged do not, as a matter of law, constitute an occurrence under the policy. First, it argues that National Decorating's failure to apply a sufficiently thick coat of paint to the exterior of the Building cannot constitute an "accident" under the policy. Absent an "accident," West-field notes, there can be no "occurrence," as the policy requires for coverage. Second, Westfield argues that because the damage was to the Building itself, the damage is exempted from the policy's coverage. We will discuss each argument in turn.

### 1.  Underlying complaint sufficiently alleges "occurrence"

According to Westfield, there is no duty to defend the defendants here because National Decorating's failure to apply a thick enough coat of paint to the exterior of the building cannot constitute an "accident." As we have already noted, the policy at issue defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Therefore, Westfield contends that absent an "accident," there can be no "occurrence." But, we disagree that National Decorating's actions cannot constitute an "occurrence" as a matter of law.

Courts have defined the term "accident" as used in insurance policies as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Nautilus Ins. Co.*, 764 F.3d at 731 (quoting *Westfield Nat'l Ins.*

*Co. v. Cont'l Cmty. Bank & Trust Co.*, 804 N.E.2d 601, 605 (Ill. App. Ct. 2003)) (internal quotation mark omitted). Therefore, Illinois courts have determined that damage to a construction project that occurs as a result of a construction defect, does not constitute an "accident" or "occurrence" because it is "the natural and ordinary consequence of faulty construction." *See, e.g., Lyerla v. AMCO Ins. Co.,* 536 F.3d 684, 689 (7th Cir. 2008).

But, this does not foreclose the defendants' arguments that the alleged damage could fall within the policy's coverage and therefore, triggers a duty to defend. Under Illinois law, negligently performed work or defective work can give rise to an "occurrence" under a CGL policy. *Id.* at 690 (citing *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.,* 126 F.3d 886 (7th Cir. 1997)). This is true where, as is the case here, the policy defines an "occurrence" to include not only an accident, but also "continuous or repeated exposure to conditions." *Id.* Here, the underlying complaint alleges that National Decorating was negligent. This is sufficient to satisfy the policy's occurrence requirement when determining whether there is a duty to defend at this juncture in the litigation.[1]

---

[1] We agree with the district court that the issue of indemnification is premature at this point in the litigation. Therefore, we leave for another day whether the record demonstrates that there was an "accident" such that the policy dictates indemnification.

### 2. Underlying complaint alleges covered property damage

Under Illinois law, CGL policies are not intended to serve as performance bonds, and therefore, "economic losses sustained as a result of defects in or damage to the insured's own work or product are not covered." *Bazzi*, 815 F.2d at 1148. Nonetheless, "damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy." *J.P. Larsen*, 956 N.E.2d at 532 (citing *CMK Dev. Corp. v. W. Bend Mut. Ins. Co.*, 917 N.E2d 1155 (Ill. App. Ct. 2009)). Here, the parties dispute what constitutes the scope of the project. Westfield contends that the project was the entire 200 North Jefferson building and because the damage alleged is to that building, it is excluded from the policy's scope. The defendants disagree, arguing that the scope of the project was National Decorating, the Named Insured's, work. We agree with the defendants.

We find *Bazzi* instructive. There, a construction company was hired to remodel an existing garage by adding a second floor. While pouring the concrete for the additional level, the supporting joists of the garage began to buckle and the structural integrity of the whole building was compromised. In the underlying suit against the construction company, the complaint alleged that the structural integrity of the existing garage building was compromised by the construction company's negligent, willful, and wanton conduct.

The construction company tendered its defense to the insurance company under a CGL policy. The insurance company in turn filed a declaratory action, much like the one here. We found that although under Illinois law CGL policies "are

not intended to pay the costs associated with repairing or replacing the insured's defective work and products," the duty to defend had been triggered because the underlying complaint contained allegations of damage to the building beyond the construction company's own work and product. 815 F.2d at 1148–49 (citation omitted).

Westfield contends that *Bazzi* is inapplicable here because 200 North was a new construction. Yet, this is neither the line that *Bazzi* drew nor one that we find we must draw. Rather, in *Bazzi*, we noted that "[h]ad Bazzi contracted to construct an entirely new building for [the defendant], any damage to or defects in that building, *which would be defined as the property or work product of Bazzi*, would not be covered under the policy." *Id.* (emphasis added). In *Bazzi*, that was not the case. *Id.* And, although Westfield would have us ignore the italicized language, *Bazzi* dictates that the relevant inquiry when determining the scope of a project is what the parties contracted for, not whether the project was a new construction or an existing building. *See also J.P. Larsen*, 956 N.E.2d at 532 (finding a duty to defend in a suit for damages caused by the subcontractor's negligent workmanship to the new construction).

Westfield points to *Viking Construction Management, Inc. v. Liberty Mutual Insurance Company*, 831 N.E.2d 1 (Ill. App. Ct. 2005), in support of its position that damage to a new construction is not covered property damage under a CGL. This case is not, however, persuasive as there, the underlying complaint only sought to recover the cost to repair and replace the named insured's work. *Id.* at 16. That is not the case here.

Nor is *CMK Development* instructive. 917 N.E.2d 1155. In *CMK Development*, the Named Insured was the developer, who brought suit after its insurer failed to provide it with a

defense in the underlying action brought by a purchaser of one of its homes. But there, the project was clearly the entire home—the purchaser contracted directly with the developer for the delivery of the new construction. Therefore, there could be no dispute over the project's scope.

Here, in contrast, the Named Insured is National Decorating, a subcontractor responsible for painting the exterior of 200 North. The underlying complaint seeks to recover for damages incurred to other portions of the building, not just the exterior, which was allegedly coated with an insufficient amount of paint. It would be illogical to conclude that the scope of the project for which National Decorating contracted was the entire 200 North Building. Yet, to rebut this conclusion, Westfield contends that the appropriate test for determining the scope of the project is from the end-user's perspective. Therefore, it argues, because the end user contracted for the construction of the entire building, not simply the painting services, the project must be considered to be the entire Building. In support of this position, Westfield relies upon a products liability case, *Trans State Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997). But, we do not see a compelling reason for turning to the products liability realm when *Bazzi* compels a finding that the duty to defend has been triggered.

Additionally, Westfield argues that from a policy perspective, finding that there is a duty to defend under a subcontractor's CGL policy would obviate the need for a general contractor or developer to carry its own coverage. Rather, Westfield asserts that a general contractor or developer could trigger coverage under "multiple policies for any damage to the

'building itself.'" But, this argument is disingenuous, as coverage would only be available for damage caused to the building as a result of an "occurrence" caused by the Named Insured's work. Therefore, the policy requires a clear connection between the damage and the subcontractor's work. It would not allow for absolute coverage for any and all harm caused by a project, such that it is no longer prudent or necessary for the general contractor or developer to carry its own CGL coverage. Westfield's concerns are without merit.

Lastly, and without citing any supporting authority, Westfield contends that it is "well-settled ... that additional insured coverage is not broader than, but in fact narrower than the coverage offered the name insured in the same CGL policy." Yet, the plain language of the "Additional Insured Endorsement" belies this assertion. That endorsement states, **"Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, *but only with respect to liability arising out of 'your work' … .*" (emphasis added). The policy later defines "your work" as "work or operations performed by you or on your behalf." It also defines "you" and "your" as the "Named Insured," who all parties here agree is National Decorating. Therefore, the policy clearly contemplates providing coverage for the Additional Insureds, here the defendants, for liability arising out of National Decorating's work, and *Bazzi* and *J.P. Larsen* support our conclusion that there is a duty to defend here.

### III.  CONCLUSION

We AFFIRM the district court's grant of summary judgment for the Appellees-defendants.