In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1062

LEXINGTON INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

CHICAGO FLAMEPROOF & WOOD
SPECIALTIES CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 17-cv-03513 — **Elaine E. Bucklo**, *Judge.*

ARGUED FEBRUARY 13, 2020 — DECIDED FEBRUARY 27, 2020

Before FLAUM, MANION, and BARRETT, *Circuit Judges.*

FLAUM, *Circuit Judge.* The district court held that Lexington Insurance Company ("Lexington") owed no duty to defend Chicago Flameproof & Wood Specialties Corporation ("Chicago Flameproof") in three underlying lawsuits. We affirm. The underlying complaints do not allege an "occurrence"—or accident—as is required to trigger Lexington's duty to defend under the insurance policy at issue.

**I. Background**

Chicago Flameproof is an Illinois-based distributor of commercial building materials, including fire retardant and treated lumber ("FRT lumber"). During the relevant time, Chicago Flameproof maintained a general liability insurance policy through Lexington. Under the policy, Lexington has "the right and duty to defend [Chicago Flameproof] against any suit seeking [covered] damages" but no duty to defend against a suit seeking uncovered damages.

The policy provides that Lexington will pay sums that Chicago Flameproof "becomes legally obligated to pay as damages because of … property damage" that is "caused by an occurrence that takes place in the coverage territory." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy defines "property damage" as "physical injury to tangible property, including all resulting loss of that property," or "loss of use of tangible property that is not physically injured."

Lexington and Chicago Flameproof dispute whether the policy potentially covers damages alleged against Chicago Flameproof in three lawsuits—one in federal court in Minnesota and two in Minnesota state courts—all stemming from Chicago Flameproof's sale of lumber to Minnesota-based residential and commercial contractors JL Schwieters Construction, Inc. and JL Schwieters Building Supply, Inc. (collectively, "Schwieters"). According to the underlying complaints, Schwieters contracted with two building contractors, Big-D Construction Midwest, LLC and DLC Residential, LLC (collectively, the "general contractors"), to provide labor and material for the framing and paneling for four building projects

in Minnesota. Elness Swenson Graham Architects, Inc. ("El-ness"), the architectural firm for all four projects, required that FRT lumber meeting the requirements set forth in the International Building Code ("IBC") be used for the exterior walls of each building.

The IBC is a model building code that sets forth standards for the construction process, including "detailed labeling standards for FRT lumber, requiring that eight specific pieces of information be stamped on each piece of FRT lumber." Minnesota and Illinois have adopted the IBC and its testing and certification requirements for FRT lumber. All fifty states have adopted some version of the IBC.

Schwieters alleges that it contracted with Chicago Flameproof to purchase a particular brand of FRT lumber, D-Blaze lumber, for use in the four projects. According to the underlying complaints, "Chicago Flameproof knew or had reason to know that [Schwieters] was purchasing FRT lumber for the particular purpose of installing it in buildings that required IBC-compliant FRT lumber." Given that "Chicago Flameproof is one of the geographically closest FRT lumber suppliers to Minnesota," the underlying complaints allege that "Chicago Flameproof knew or should have known that the IBC and the IBC testing and certification requirements for FRT lumber had been adopted by the State of Minnesota."

Chicago Flameproof nevertheless made a "unilateral decision" to instead deliver its in-house FlameTech brand lumber, which purportedly was not IBC-compliant FRT lumber because it had not been tested, certified, listed, or labeled pursuant to IBC requirements. The FlameTech lumber thereby "did not meet the IBC definition of FRT lumber" and there-

fore "was not actually FRT lumber." Chicago Flameproof allegedly "concealed that … [the] FlameTech lumber had not been tested or listed pursuant to IBC requirements for FRT lumber."

Apparently unaware that Chicago Flameproof had delivered uncertified lumber, Schwieters installed the FlameTech lumber in all four building projects. After Elness, the general contractors, and the building owners discovered that the lumber was not IBC-certified, they instructed Schwieters to remove it and replace it with IBC-certified FRT lumber. Chicago Flameproof ultimately "admitted" that it had shipped "FlameTech lumber rather than the D-Blaze FRT lumber advertised on its website and ordered by" Schwieters.

The underlying complaints allege that, as a supplier of commercial building materials, "Chicago Flameproof was or should have been aware of the importance of IBC testing and certification requirements for FRT lumber and was or should have been aware of the potential consequences associated with a failure to comply with IBC testing and certification requirements." Indeed, Chicago Flameproof displayed on its website that it had "expertise in the specification and use of treated wood products." Here, the consequences of Chicago Flameproof's alleged failure to supply IBC-certified lumber included that the uncertified FlameTech lumber was ultimately removed and replaced with IBC-certified FRT lumber, damaging the surrounding materials into which the lumber had been integrated.

Schwieters sued Chicago Flameproof in federal court in Minnesota, charging it with negligent misrepresentation, fraudulent misrepresentation, deceptive business practices, false advertising, consumer fraud, breach of warranties, and

breach of contract. Under the federal complaint's negligent misrepresentation count, Schwieters alleges that Chicago Flameproof represented that it had D-Blaze FRT lumber available for purchase but did not exercise reasonable care when it "fail[ed] to communicate to [Schwieters] that it did not have sufficient quantity of D-Blaze FRT lumber in stock to fulfill [Schwieters]'s orders, fail[ed] to communicate to [Schwieters] Chicago Flameproof's unilateral decision to ship FlameTech lumber to [Schwieters] in place of the D-Blaze FRT lumber that had been ordered, and fail[ed] to disclose that the Flame-Tech lumber supplied to [Schwieters] did not comply with IBC requirements related to the testing, listing, and labeling of FRT lumber and thus was not FRT lumber." The fraudulent misrepresentation count alleges that Chicago Flameproof "knew that it did not have sufficient quantities of D-Blaze FRT lumber available for purchase and intended to fill orders with its own in-house manufactured brand, FlameTech," and that Chicago Flameproof knew its "statements on its website that its lumber was tested, listed, and labeled in accordance with IBC requirements were false." Schwieters also brought third-party complaints in Minnesota state court against Chicago Flameproof seeking contribution and indemnification for the same conduct. The damages alleged in the underlying lawsuits include damages to the exterior walls, wiring, and insulation resulting from the process of removing and replacing the FlameTech lumber.

Lexington filed this declaratory judgment action, seeking a ruling that it owes no duty to defend Chicago Flameproof for the conduct alleged in the underlying complaints. The district court entered summary judgment for Lexington, holding that if "Flameproof knowingly supplied non-IBC-compliant

lumber and concealed that it did so," as the underlying complaints assert, "then the property damage that allegedly resulted from tearing out that non-compliant lumber cannot be said to have been caused by an accident. Rather, these damages are the natural and ordinary consequence of knowingly supplying a non-compliant product and thus do not potentially fall within the [] policy's coverage."

Chicago Flameproof now appeals the district court's entry of summary judgment for Lexington, arguing that Lexington must defend it because Chicago Flameproof's shipment of lumber and the tearing out of that lumber were occurrences that caused property damage. Lexington responds that the underlying complaints do not trigger its duty to defend because the complaints do not allege property damage caused by an occurrence, and that coverage is otherwise excluded by the insurance policy's business risk exclusions.[1]

## II. Discussion

### A. Standard

"We review the district court's interpretation of the insurance policy at issue and the resulting grant of summary judgment *de novo*." *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 694–95 (7th Cir. 2017). To determine whether Lexington owes a duty to defend, we liberally construe the allegations in the underlying complaints in favor of Chicago Flameproof and compare those allegations to the insurance policy. *Id.* at 695.

---

[1] Chicago Flameproof did not respond to Lexington's invocation of the business risk exclusions.

"The duty to defend is triggered if the allegations in the underlying complaint[s] fall within, or potentially within, the policy's coverage." *Id.* It is not triggered, however, if it is "clear from the face of the underlying complaint[s] that the allegations fail to bring the case within or potentially within[] the policy's coverage." *Id.* (internal quotation marks and citation omitted).

An insurer must defend an insured even if only one theory of recovery in the underlying complaints is within the potential coverage of the policy. *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). But "little weight is given to the legal label under which a count is brought; rather, the determination regarding whether there is a duty to defend focuses on the conduct alleged." *Ill. Cas. Co. v. W. Dundee China Palace Rest., Inc.*, 2015 IL App (2d) 150016, ¶ 20 (citation omitted). We must read the underlying complaints as a whole to assess the true nature of the allegations. *Id.* "[W]hile under Illinois law the duty to defend is broad, the duty is not limitless." *Westfield*, 863 F.3d at 695.

**B. "Occurrence"**

The underlying complaints do not trigger Lexington's duty to defend because they do not allege an "occurrence." An "occurrence" under the insurance policy is an "accident," which under Illinois law is "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Acuity Ins. Co. v. 950 W. Huron Condo. Ass'n*, 2019 IL App (1st) 180743, ¶ 28, *appeal denied*, 132 N.E.3d 313 (Ill. 2019) (citations omitted). If an act results in an injury that "is the rational and probable consequence of the act or, stated differently, the natural and ordinary consequence of the act,"

then the act "is not an accident." *Stoneridge Dev. Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 652 (Ill. App. Ct. 2008) (internal citations and quotation marks omitted).

The underlying complaints allege that, as a supplier of commercial building materials, Chicago Flameproof was or should have been aware of the importance of IBC certification requirements and the consequences of failing to comply with them. Chicago Flameproof nevertheless made a "unilateral decision" to ship FlameTech—which had not gone through the IBC-certification process—rather than the D-Blaze FRT lumber that Schwieters had ordered and that had gone through the IBC-certification process. Chicago Flameproof then "concealed" that it had shipped lumber that was not IBC-certified. The natural and ordinary consequence of supplying and concealing that it had supplied uncertified lumber, given the IBC certification requirements, was that the lumber would need to be removed and replaced with lumber that had been certified as IBC-compliant. That, in turn, would damage the surrounding materials into which the lumber had been integrated.

Hence, according to the underlying complaints, Chicago Flameproof deliberately shipped uncertified lumber, concealed that fact, and was aware or should have been aware of the consequences of those actions—namely, that the uncertified lumber would need to be ripped and torn from the projects.

> [I]f a contractor uses inadequate building materials, … he takes a calculated business risk that no damage will take place. If damage does take place, it flows as an ordinary and natural consequence of the contractor's failure to perform the

> construction properly or as contracted and there can be no coverage for such damage.

*Viking Const. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 7 (Ill. App. Ct. 2005) (citation and brackets omitted).

The underlying complaints allege no "unforeseen," "undesigned," or "unexpected" event. *Acuity*, 2019 IL App (1st) 180743, ¶ 28. The ripping and tearing out of the FlameTech lumber was the natural and ordinary consequence of supplying lumber that was not IBC-certified. *Cf. Ind. Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 73 (Ill. App. Ct. 1993) ("[T]he cracks in the floor and the loose paint on the exterior of the building are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint."); *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1010 (Ill. App. Ct. 1991) ("[T]he allegation of too hot and too cold temperatures in the building are no more than the natural and ordinary consequences of installing an inadequate HVAC system.").

Faulty workmanship may constitute an occurrence if it results in damages that exceed the scope of the insured's work product. *See, e.g., Certain Underwriters at Lloyd's London v. Metro. Builders, Inc.*, 2019 IL App (1st) 190517, ¶¶ 46–56 (discussing cases); *Acuity*, 2019 IL App (1st) 180743, ¶ 43 (holding there was occurrence where insured's allegedly poor workmanship caused damages "to occur to a part of the construction project outside of the [insured]'s scope of work"). There also may be an occurrence where the insured "was unaware of the defective nature" of its component until after it was incorporated into a finished product. *Elco Indus., Inc. v. Liberty Mut. Ins. Co.*, 414 N.E.2d 41, 44 (Ill. App. Ct. 1980).

Here, however, the underlying complaints are inconsistent with the notion that Chicago Flameproof merely engaged in shoddy workmanship or shipped lumber that had a hidden defect resulting in damages that Chicago Flameproof could not have reasonably expected. Rather, the underlying complaints allege that Chicago Flameproof deliberately shipped uncertified lumber despite knowing the consequences of doing so.

In *Wilkin*, the Illinois Supreme Court held that, given the requirement to construe pleadings and insurance policies in favor of the insured, the insured's installation of asbestos-containing products was an occurrence even though the underlying complaints included a conclusory allegation that the insured "knew or should have known of the propensity of [its] product to release toxic asbestos fibers." 578 N.E.2d at 932 (emphasis omitted). Conversely, this case includes more than a conclusory allegation that Chicago Flameproof knew or should have known of the consequences of its deliberate act.

The underlying complaints provide that, as a supplier of commercial building materials, Chicago Flameproof was or should have been aware of IBC certification requirements. Indeed, Chicago Flameproof held itself out as having "expertise in the specification and use of treated wood products." The state where Chicago Flameproof was based (Illinois) and the state where the projects were located (Minnesota) had both adopted the IBC certification requirements for FRT lumber. In fact, all fifty states had adopted some form of the IBC certification requirements. Based on these allegations, Chicago Flameproof was or should have been aware that its domestic sales—and its sales relating to these projects in particular—would need to comply with IBC certification requirements.

There was nothing regarding the natural and ordinary consequences of supplying uncertified lumber for projects that require certified lumber that was unknown or hidden to Chicago Flameproof at the time it shipped the uncertified lumber.

Chicago Flameproof would likely prefer that Schwieters had left the uncertified FlameTech lumber in place pending Chicago Flameproof's efforts to obtain certification for it, but that does not mean that Chicago Flameproof could not have reasonably expected that Elness, the general contractors, or the building owners would require the lumber to be removed instead of waiting. While Chicago Flameproof may have an argument regarding a failure to mitigate damages, we need not resolve any such argument here. The underlying complaints highlight that "Chicago Flameproof was or should have been aware of the importance of IBC testing and certification requirements for FRT lumber" beyond merely providing lumber that is later found to have met the IBC requirements.

Chicago Flameproof insists it believed that supplying the FlameTech lumber would satisfy its contractual obligation to supply FRT lumber because the FlameTech lumber satisfied the IBC requirements even though it was not yet IBC-certified. This does not square, however, with the allegations in the underlying complaints that Schwieters ordered a specific brand of FRT lumber, D-Blaze, and that Chicago Flameproof knew or should have known of the importance of IBC certification beyond merely satisfying other IBC requirements.

Although the negligent misrepresentation count in one of the underlying complaints uses the label "negligent," "courts give little weight to the label that characterizes the underlying

allegations." *Farmers Auto. Ins. Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 39 (internal quotation marks and citation omitted). "The underlying complaint[s] must be read as a whole to assess [their] true nature." *W. Dundee*, 2015 IL App (2d) 150016, ¶ 20. Regardless of the labels used, the focus of our inquiry remains on whether there was an "unforeseen[,] … undesigned, sudden, or unexpected event," and whether the injury alleged was the "natural and ordinary" consequence of Chicago Flameproof's actions. *Stoneridge*, 888 N.E.2d at 650, 652. Acts that give rise to a negligent misrepresentation claim can result in an occurrence "as long as the insured did not expect or intend the injury." *USAA Cas. Ins. Co. v. McInerney*, 2011 IL App (2d) 100970, ¶ 18. "Expected injuries are those that should have been reasonably anticipated by the insured." *Farmers Auto. Ins. Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 34.

Schwieters has not alleged that Chicago Flameproof was negligent or failed to exercise reasonable care when it made the "unilateral decision" to ship uncertified lumber. Rather, the underlying complaints allege in the negligent representation count that Chicago Flameproof did not exercise reasonable care by representing that it had certified D-Blaze FRT lumber available for purchase and by failing to notify Schwieters that it had supplied uncertified lumber. As the district court explained, when examining the underlying complaints as a whole, "the thrust … is that Chicago Flameproof engaged in deliberate conduct—the shipping of the wrong lumber and the concealment of that fact—that caused the alleged property damage."

Although some of the allegations used the language of "negligence" or "reasonable care," the injury alleged stems

from Chicago Flameproof's "unilateral decision" to supply the uncertified lumber and concealment of having done so. *Cf. Farmers*, 2012 IL App (4th) 110461, ¶ 40 (holding that despite negligence label, insured's conduct could "only be described as intentional when considering the complaint as a whole"); *Pekin Ins. Co. v. Dial*, 823 N.E.2d 986, 992 (Ill. App. Ct. 2005) ("[E]ven though count I of [the underlying] complaint was couched in terms of negligence, the complaint alleged a course of conduct that was clearly intentional and not merely negligent or accidental."). While exercising reasonable care by informing Schwieters that it had shipped uncertified lumber might have provided an opportunity to avoid the installation and removal of the FlameTech lumber (and the resulting damages), Chicago Flameproof's failure to avail itself of that opportunity does not undermine the conclusion that the damage alleged was the natural and ordinary result of Chicago Flameproof's deliberate decision to supply, and conceal that it had supplied, uncertified lumber.[2]

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[2] Chicago Flameproof did not respond in appellate briefing or at oral argument to Lexington's argument that the insurance policy's business risk exclusions also preclude coverage. Because there was no "occurrence," we need not rely on the business risk exclusions to decide this appeal.