In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2542

SMART OIL, LLC,

*Plaintiff-Appellee,*

*v.*

DW MAZEL, LLC,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-08146 — **Harry D. Leinenweber**, *Judge.*

ARGUED MAY 21, 2020 — DECIDED AUGUST 17, 2020

Before MANION, BARRETT, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Smart Oil, LLC agreed to sell
thirty parcels of land with gas stations and convenience stores
to DW Mazel, LLC ("DWM"). DWM failed to close under the
agreement, which by its terms granted Smart Oil the earnest
money for the transaction as liquidated damages. But DWM
never paid that money, and Smart Oil sued. DWM counter-
claimed for breach of contract and fraudulent inducement.

The district court granted Smart Oil summary judgment, ruling that DWM breached the agreement by not paying the earnest money, which Smart Oil was entitled to as liquidated damages under Illinois law. The court also ruled that DWM's counterclaims for breach of contract and fraudulent inducement failed for the same reason. DWM appeals. The district court ruled correctly in all respects, so we affirm.

## I. BACKGROUND

During 2014, Smart Oil's sole member, Mehmood Syed, marketed for sale numerous properties with gas stations and convenience stores. After lengthy negotiations, Smart Oil and DWM executed a Purchase and Sale Agreement and Joint Escrow Instructions (the "Agreement") by which DWM agreed to purchase thirty such parcels of real property for $67 million. Both parties were represented by counsel throughout the negotiations.

The Agreement requires DWM to initially deposit $300,000 into an escrow account. That deposit was to take place during a due diligence period following acceptance of the Agreement. The Agreement obliges the escrow account holder to transfer that deposit to the title company. Then, at the close of the due diligence period, DWM is to pay a second deposit of $450,000 to the title company. The total earnest money of $750,000 is about one percent of the total purchase price.

DWM never paid the initial earnest money deposit. Despite DWM's failure to do so, the parties continued their due diligence investigations and negotiations. By the close of the due diligence period, the Agreement requires DWM to provide Smart Oil with written notice if, after its investigations,

DWM disapproved of the purchase. If DWM had provided this written notice, the Agreement would have terminated, and the earnest money would have been returned to DWM. If DWM did not provide that written notice, section 4(a)(i) of the Agreement states that such "failure to timely deliver [written] notice [of its disapproval] shall be deemed Buyer's approval of such investigations," and Smart Oil would be entitled to keep the earnest money if the deal otherwise fell through. DWM asserts it negotiated with Smart Oil to lengthen the due diligence period, extending the time to provide written notice of disapproval. Regardless, DWM failed to provide written notice of disapproval, which DWM does not dispute. At the close of the due diligence period, DWM also did not pay the second deposit.

In the meantime, Syed contacted property owners about selling their properties to Smart Oil which would then sell them in the aggregate to DWM. This is known as a "flip deal," and according to Smart Oil was contemplated under section 17(c) of the Agreement, which states in bold: "The parties acknowledge that Seller is the holder of a portfolio of gas station businesses, real estate and/or leases and only nominal title holder for purposes of transferring title to the Buyer." To make good on its end of the Agreement, Smart Oil executed contracts with various property owners for the sale of their properties.

Ultimately, DWM failed to close under the terms of the Agreement and the parties' deal fell through. The individual property owners did not sell their properties to Smart Oil under the individual contracts, and Smart Oil never flipped those properties to DWM.

Smart Oil sued DWM for breach of contract, arguing it was entitled to $750,000 in earnest money as liquidated damages under the following term: "If Buyer defaults in its performance … under this Agreement, including the obligation of Buyer to purchase the Property if all conditions precedent to such obligations has been satisfied, Seller shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement explains the need for liquidated damages in conspicuous language: "IT BEING UNDERSTOOD THAT THE DAMAGE TO SELLER CAUSED BY ANY SUCH DEFAULT OF BUYER WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." The liquidated damages clause survives termination of the contract per section 17(a). Both parties signed under that clause demonstrating their consent and agreement.

DWM counterclaimed for breach of contract and fraudulent inducement, asserting Smart Oil failed to perform conditions precedent under the Agreement and deceived DWM into executing the Agreement. According to DWM, Smart Oil did not have authority to convey the properties and failed to provide adequate due diligence materials. After discovery both parties moved for summary judgment.

The district court ruled that Smart Oil satisfied all conditions precedent of the Agreement and that DWM breached the contract by not paying the earnest money. First, the court found that Smart Oil had authority to convey the properties, relying on numerous sworn statements from property owners verifying that they were ready to sell the properties to Smart Oil for Smart Oil to "flip" them to DWM. Second, the court found that DWM failed to give written notice of disapproval

of the due diligence investigations, and that failure was "deemed Buyer's approval of such investigations" under Section 4(a)(i) of the Agreement. Because DWM approved of the due diligence materials under the Agreement, Smart Oil satisfied its condition precedent for due diligence disclosures. So DWM's obligation to pay the earnest money remained, and DWM admits it never paid.

The district court also held that Smart Oil was entitled to the earnest money as liquidated damages under Illinois law, noting that DWM's representative signed the liquidated damages clause that explicitly stated actual damages would be extremely difficult or impossible to ascertain. The court found the liquidated damages figure to be a fair and reasonable amount and granted Smart Oil's motion for summary judgment.

The district court also denied DWM's cross-motion for summary judgment on its breach of contract and fraudulent inducement claims. Construing the facts in the light most favorable to Smart Oil, the court found that the property owners authorized Smart Oil to effectuate the flip transactions and that they were ready to sell their properties to DWM. The Agreement includes a prevailing party attorneys' fees and costs provision, under which the court granted fees and costs to Smart Oil. DWM appeals.

## II. DISCUSSION

As a federal court sitting in diversity, we honor the Agreement's choice-of-law clause specifying Illinois law as controlling, unless to do so would be contrary to public policy. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2014). We review the district court's decision granting

summary judgment de novo, construing the facts in a light favorable to the non-moving party. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 694–95 (7th Cir. 2017).

### A. Breach of Contract

Under Illinois law, a plaintiff suing for breach of contract must prove: (1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (citing *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.*, 963 N.E.2d 968, 981 (Ill. App. Ct. 2011)).

The parties agree a contract exists, and they also agree DWM never paid the earnest money. They disagree whether Smart Oil performed its conditions precedent under the Agreement. DWM asserts Smart Oil's breach of contract claim fails because DWM is excused from paying the earnest money. DWM reasons that Smart Oil is only entitled to keep the earnest money under Section 17(a) of the Agreement if it has satisfied conditions precedent, which DWM alleges Smart Oil failed to do. Smart Oil's alleged failure to satisfy its conditions precedent is also the basis for DWM's breach of contract counterclaim.

A "condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform." *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 741 N.E.2d 651, 653 (Ill. App. Ct. 2000) (quoting *McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. Ct. 1984)). Section 4 of the Agreement provides that DWM's obligation to consummate the transaction is subject to the following

conditions precedent for DWM's benefit: (1) due diligence investigations and materials; (2) title insurance commitments for each of the properties; (3) inventories of the personal property for each of the businesses; and (4) that Smart Oil's representations and warranties were truthful and accurate under Section 15 of the Agreement. DWM argues Smart Oil failed to satisfy two of these conditions: it did not have authority to convey the properties, and it failed to produce the requisite due diligence materials. Both arguments fail, however.

First, Smart Oil has shown that it had authority to execute the Agreement. Section 17(c) of the Agreement states in bold: "The parties acknowledge that Seller is the holder of a portfolio of gas station businesses, real estate and/or leases and only nominal title holder for purposes of transferring title to the Buyer." To effectuate the "flip deal" contemplated by the Agreement, Smart Oil executed contracts with numerous property owners for the sale of their properties, which would then be sold to the aggregate purchaser, DWM. To prove Smart Oil had authority to execute the Agreement, Smart Oil provided sworn statements from owners of 21 of the 30 properties. They declared under penalty of perjury they were ready and willing to sell their properties to carry out the Agreement and that Smart Oil had authority to flip the properties to DWM. As for the remaining nine properties, DWM has not produced any evidence to show that Smart Oil did not have authority to do a "flip deal" or that Smart Oil misled DWM. Nevertheless, DWM maintains that Smart Oil failed to "produce the necessary evidence to establish that it had the actual legal right and authority to sell 30 Gas Stations to DWM" because Smart Oil's discovery production was "nine short of the 30 Gas Stations."

The Agreement does not require Smart Oil to submit the specific proof that DWM requests. On its breach of contract claim Smart Oil must prove it satisfied its conditions precedent by a preponderance of the evidence. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724 (7th Cir. 2008) (noting "all that is required to prove a breach of contract" claim in Illinois is "preponderance of the evidence"). Submitting declarations from more than two-thirds of the property owners—with no evidence to the contrary for the remaining properties and no evidence that Smart Oil deceived DWM—satisfies that standard.

Second, even if Smart Oil failed to provide DWM with the requisite due diligence materials—which we do not conclude—DWM approved Smart Oil's due diligence disclosures by not submitting written notice of disapproval. Section 4(a)(i) of the Agreement states: "On or before the expiration of the Due Diligence Period, Buyer shall deliver to Seller; Buyer's written notice of its disapproval of its due diligence investigations for the Property. Buyer's failure to timely deliver such notice shall be deemed Buyer's approval of such investigations." DWM argues the parties agreed to an extension of the due diligence period. Even if so, an extension is not written notice of disapproval. Had DWM provided such notice, the Agreement would have terminated, and DWM could have recovered the earnest money. But that is not what happened, so DWM's obligation to pay the earnest money remains unfulfilled.

DWM argues even if it did not provide written notice of disapproval under section 4(a)(i), Smart Oil is still not entitled to the earnest money because section 4(a)(i) "does not address the recovery of liquidated damages, but instead the effect of

DWM's written disapproval of due diligence materials." This argument is misplaced. DWM contends Smart Oil failed to satisfy a condition precedent by not submitting proper due diligence materials. DWM's lack of written notice of disapproval under Section 4(a)(i), which per the Agreement indicated DWM approved Smart Oil's due diligence materials, rebuts DWM's assertion that Smart Oil failed to satisfy its conditions precedent.

Because Smart Oil satisfied its conditions precedent under the Agreement, DWM breached the contract by not paying the earnest money. DWM's counterclaim for breach of contract fails for the same reason. We turn next to the question whether Smart Oil is entitled to the earnest money as liquidated damages.

### B. Liquidated Damages

A liquidated damages clause provides a predetermined remedy in the event a party breaches. *McNamara v. O'Donnell Haddad LLC*, 2016 IL App (2d) 150519-U, ¶28. "This predetermined amount may or may not exceed the actual damages and both parties agree to accept this inherent risk." *Id.* An unreasonably large liquidated damages clause is unenforceable under Illinois law on grounds of public policy. *Id.* Liquidated damages clauses in real estate contracts are common to avoid the difficulty of proving damages by methods such as market value, resale value, or otherwise. *Karimi v. 401 N. Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶16 (citing *Siegel v. Levy Organization Dev. Co.*, 538 N.E.2d 715, 717 (Ill. App. Ct. 1989)).

Whether a liquidated damages clause in a contract is a penalty or a valid provision is a question of law. *Grossinger*

*Motocorp, Inc. v. Am. Nat'l Bank & Trust Co.*, 607 N.E.2d 1337, 1345 (Ill. App. Ct. 1992). The burden of proof "rests on the party resisting enforcement of a liquidated damages clause to show that the agreed-upon damages are clearly disproportionate to a reasonable estimate of the actual damages likely to be caused by a breach." *XCO Int'l, Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1003 (7th Cir. 2003). Here, that burden rests on DWM.

Under Illinois law, a liquidated damages clause is valid and enforceable if: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages that might occur; and (3) actual damages would be uncertain in amount and difficult to prove. *Karimi*, 2011 IL App (1st) 102670, ¶16 (citing *Grossinger*, 607 N.E.2d at 1346). "The reasonableness of the amount, though, depends not on the actual damages suffered by the non-breaching party, but on whether the amount reasonably forecasts and bears some relation to the parties' potential loss as determined at the time of contracting." *Id.* ¶24

Illinois's requirement that liquidated damages be reasonable has been characterized as "mysterious," especially in cases involving sophisticated parties. *XCO Int'l, Inc.*, 369 F.3d at 1001. "[W]here both parties are substantial commercial enterprises … it is difficult to see why the law should take an interest in whether the estimate of harm underlying the liquidation of damages is reasonable. Courts don't review the other provisions of contracts for reasonableness; why this one?" *Id.* Yet the rule against contractual penalties "hangs on, but is chastened by an emerging presumption against

interpreting liquidated damages clauses as penalty clauses." *Id.* at 1003.

We do not forget that state courts are the "ultimate expositors" of their own laws. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see, e.g.*, *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999) ("Lacking any inherent power to make state law such as a state court might have … a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy."). So we do not opine on whether Illinois's liquidated damages law constitutes wise policy; we only apply it.

Here, the Agreement states if DWM fails to purchase the properties, Smart Oil "shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement further explains the rationale for liquidated damages in conspicuous language that damages to Smart Oil caused by DWM's default "WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." Both parties signed immediately below the liquidated damages clause, demonstrating their consent and agreement to the provision.

The plain language of the Agreement satisfies two of the three elements for liquidated damages under Illinois law. Specifically, the Agreement states that the parties' signature under the liquidated damages clause demonstrated their consent and agreement to the provision, satisfying the first element that "the parties intended to agree in advance to the settlement of damages that might arise from the breach." *Karimi*, 2011 IL App (1st) 102670, ¶16. The Agreement also satisfies the third element that "actual damages would be uncertain in amount and difficult to prove" by explicitly stating:

"DAMAGE TO SELLER … WOULD BE EXTREMELY
DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." What re-
mains is to evaluate the second element, the reasonableness of
the damages amount.

The liquidated damages amount here was $750,000, or ap-
proximately one percent of the contractual purchase price of
$67 million. Under Illinois law, a liquidated damages clause
of one percent of the purchase price is reasonable, given that
Illinois "[c]ourts have considered earnest money representing
up to 20% of the purchase price a reasonable sum as liqui-
dated damages." *Karimi*, 2011 IL App (1st) 102670, ¶24 (hold-
ing earnest money of 15% of the purchase price in real estate
contract was reasonable liquidated damages); *see, e.g., Siegel v.
Levy Org. Dev. Co.*, 182 Ill. App. 3d 859, 860–63 (Ill. App. Ct.
1989) (holding earnest money of $320,000 on a $1,600,000 con-
tract, representing two percent of the purchase price, was rea-
sonable). One percent of the Agreement's purchase price is
not "clearly disproportionate" under *XCO Int'l, Inc.*, 369 F.3d
at 1003.

DWM argues the liquidated damages clause is unenforce-
able because Smart Oil has not incurred any actual damages.
But whether Smart Oil ultimately incurred any actual dam-
ages is not relevant to the reasonableness decision, and actual
damages are not required under Illinois law before liquidated
damages can be assessed. *See, e.g., Kensington Rock Island Ltd.
P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 124 (7th Cir.
1990) (noting the "Illinois rule is clear" that plaintiff was enti-
tled to earnest money in real estate contract because of buyer's
default regardless of the amount of actual damages which
may have resulted); *Bamberg v. Griffin*, 394 N.E.2d 910, 914 (Ill.
App. Ct. 1979) (noting "it has been long established in Illinois

that the provision for earnest money in a contract, in the absence of an express provision to the contrary, will be interpreted as a provision for liquidated damages and enforced without actual proof of damages required"). The only requirement under Illinois law is whether, at the time of contracting, the damages amount was reasonable in that it bore some relation to the damages that might occur. *Karimi*, 2011 IL App (1st) 102670, ¶16. The liquidated damages figure here meets that test. "The nature of a liquidated damages provision is such that the set amount may at times exceed actual damages, and other times actual damages may exceed the set amount. In entering into the purchase agreement, both parties here agreed to accept this inherent risk." *Id.* ¶27. Here, the set amount was a minor fraction of the damages amount.

DWM also contends Smart Oil is not entitled to the earnest money because the Agreement limits Smart Oil's recovery to the amount actually deposited in escrow. Because DWM never deposited the earnest money, it claims there is nothing for Smart Oil to recover. The liquidated damages provision states in unambiguous terms: "Seller *shall receive* the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement defines "Earnest Money Deposit" as "the Deposit and the Additional Deposit," which was the $300,000 initially due then the additional $450,000 at the close of the due diligence period.

This court (like others) has consistently interpreted "shall" as mandatory language. *See, e.g.*, *Judge v. Quinn*, 612 F.3d 537, 547 (7th Cir. 2010) (noting that "shall" is "normally understood as mandatory language"); *Thompson v. Veach*, 501 F.3d 832, 836 (7th Cir. 2007) (discussing "shall" as mandatory language); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972

F.2d 753, 756 (7th Cir. 1992) (finding use of the word "shall" in a contract "mandatory" and "obligatory"). *Black's Law Dictionary* defines "shall" as "has a duty to, more broadly is required to" and explains that "[t]his is the mandatory sense that drafters typically intend and that courts typically uphold." BLACK'S LAW DICTIONARY 1653 (11th ed. 2019). Although the Agreement describes the earnest money due as the "Deposit," it does not limit liquidated damages to funds actually deposited. And the language of "shall receive the entire Earnest Money Deposit" is mandatory, even if DWM did not already deposit the money. Because DWM failed to close on the transaction, by the plain language of the Agreement, Smart Oil "shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages."

DWM's argument that it does not have to pay the earnest money deposit because it never paid it in the first instance would result in the absurd outcome of wrongdoers being absolved of their debts simply by not paying them. DWM "cannot insist on abandoning [its] contract and yet [not pay] the deposit because that would enable [it] to take advantage of [its] own wrong." *Summers v. Hedenber*, 198 Ill. App. 460, 467 (1916).

Our role "in interpreting a contract is to give effect to the intention of the parties as expressed in the agreed terms." *Life Plans, Inc.*, 800 F.3d at 349. "The first and most reliable indicator of the parties' intent is what the parties wrote." *Ocean Atl. Dev. Corp. v. Aurora Christian Schs., Inc.*, 322 F.3d 983, 1006 (7th Cir. 2003) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993)). The parties here are sophisticated commercial enterprises that engaged in extensive, arms-length negotiations and, with the advice of counsel,

reached an agreement. When experienced businesses agree to a liquidated damages clause that satisfies the requirements of Illinois law, we hold the parties to their bargained deal.

### C. Fraudulent Inducement

Finally, DWM argues the district court erred by dismissing its fraudulent inducement counterclaim. DWM asserts Smart Oil knowingly made false statements concerning its ability to complete a sale under the Agreement. To prove fraudulent inducement under Illinois law, DWM must show: (1) a false statement of material fact; (2) knowledge or belief by Smart Oil that the statement was false; (3) an intention to induce DWM to act; (4) reasonable reliance upon the truth of the statement by DWM; and (5) damages. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 2013) (citing *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995)). These elements must be proved by clear and convincing evidence. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). Again, we review the district court's grant of summary judgment de novo in the light most favorable to the non-movant, here Smart Oil. *Westfield Ins. Co.*, 863 F.3d at 694–95.

The district court opined "[t]here is not much, if anything at all, by way of showing that Smart Oil fraudulently induced DWM to enter into the [] Agreement." That has not changed on appeal. Construing the facts in the light most favorable to the non-movant on this request, Smart Oil, the record shows that the property owners were ready and willing to sell their properties to DWM to fulfill the Agreement. As discussed above, Smart Oil had authority to purchase these properties and then "flip" them to DWM as the ultimate buyer. So DWM's fraudulent inducement claim fails as a matter of law.

**III. Conclusion**

Smart Oil satisfied all conditions precedent under the Agreement. DWM breached the contract by failing to pay the earnest money due, which constitutes valid liquidated damages under Illinois law. And DWM's counterclaims, including for fraudulent inducement, fail as a matter of law. So we Affirm the judgment of the district court.

As noted above, the Agreement contains a clause shifting attorneys' fees and costs to the prevailing party. Having prevailed on appeal, Smart Oil has 14 days to submit its requested attorneys' fees and costs, and DWM has 14 days to respond.